The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Sherman JOHNSON,
Defendant-Appellant.

No. 82CA0014.

Colorado Court of Appeals,
Div. I.

May 12, 1983.

Rehearing Denied June 16, 1983.

Certiorari Denied Oct. 17, 1983.

---

* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.*, Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1981 Cum.Supp.)

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Valerie J. McNevin-Petersen, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Simons & Iuppa, Craig M. Cornish, Colorado Springs, for defendant-appellant.

BERMAN, Judge.

Defendant appeals a judgment and jury verdict finding him guilty of first degree sexual assault. We affirm.

On the night of the assault, the victim and the defendant were both guests at a going-away party for one of their co-workers. After the party, a number of guests, including the victim and the defendant, went to a nearby after-hours disco. The defendant offered to drive the victim and her female friend home.

Since the victim's friend lived closer to the disco, she was dropped off first. The defendant then took a circuitous route around the city, eventually stopping at a remote look-out point in the hills overlooking Colorado Springs. During the drive, and after the defendant had stopped the car at the look-out point, the victim repeatedly asked in vain to be taken home.

When the defendant and the victim first arrived at the look-out point there was one other vehicle parked nearby. When that vehicle left, defendant backed his car further away from the road and began making advances, but according to the victim, she resisted. By the victim's account, the defendant then placed his hand over the victim's mouth and nose and told her that he could "stop [her] from breathing." When she tried to escape, the defendant placed his hand over the door lock. The defendant then forced intercourse upon her.

After the defendant took the victim home, she called a rape crisis center and was taken to the emergency room for examination. A staff physician testified that

upon examining the victim he detected the presence of non-motile sperm in her vagina. Samples were taken which, when compared with blood samples taken from the defendant, established a high probability that the semen was that of the defendant.

Samples of the victim's clothing were also tested. The test results established that sperm found on the victim's jeans could not have been that of the defendant. The victim told a detective that the sperm might have been deposited on her jeans at a drive-in a few weeks earlier when her date had attempted to have intercourse with her; however, blood tests conducted on the date eliminated this possibility. The victim then offered as a possible explanation that the semen might have been deposited there when her sister's friend had borrowed the jeans.

At trial, the victim testified that she was a virgin prior to the assault. Defense counsel attempted to cross-examine the victim concerning both the drive-in incident, and the test results which established that the semen on the victim's jeans could not have been that of the defendant. The trial court allowed cross-examination regarding the test results, but it did not permit inquiry into the details of the drive-in incident.

The defendant did not testify at trial. During closing arguments, the prosecuting attorney made the following comments:

"Rape, first degree sexual assault, is one of those crimes, and a rare breed of crime, in the sense it is one of the crimes where only two people are involved almost by definition, the actor and the victim. There were only two people out in that car .... One of them has gotten on the stand and told you what happened as best her emotional state then and now, as best as anyone could expect of a seventeen-year old girl under the circumstances to do, under grilling cross-examination.

. . . . .

Look at the evidence you have, and the only evidence you have, the only evidence you have, says that this thing, the physical facts of the situation. You agree with that. Semen inside of her, the doc-

tor says everything is consistent with her being a virgin prior to this. All physical facts support her. There has not been a shred, not a single small shred of evidence presented to you that it didn't happen, not a single shred.

. . . . .

And whatever you do, remember there were two people in that car. She has told you her story. And this is the only kind of crime ever where a prosecutor could come to you and say 'look, I really have only got one witness, a witness that has gone through an awful lot, she probably will continue to go through an awful lot in her life because of what happened to her.' "

Although not requested by defense counsel, the following instruction was given concerning the defendant's failure to testify:

"You are instructed that, while a statute of this state provides that a person charged with a crime may testify on his own behalf, he is under no obligation to do so, and the statute expressly provides that the Defendant's election not to testify shall not create any presumption against him. And in this case, the election of the Defendant not to testify should not be taken or considered by the jury as any evidence of his guilt or innocence."

The defendant requested the following instruction on his theory of the case:

"It is [the defendant's] position that no forced sexual activity took place on the morning of August 11, 1979 and that any sexual activity that took place was the product of consent of both parties."

In its stead, the trial court gave the following instruction:

"It is [the defendant's] position that no forced sexual activity took place between himself and [the victim] on the morning of August 11, 1979."

The jury convicted defendant of first degree sexual assault.

## I.

Defendant first contends on appeal that the prosecuting attorney's arguments during closing violated defendant's right to be free from compulsory self-incrimination. We disagree.

In *People v. Cornelison,* 44 Colo.App. 283, 616 P.2d 173 (1980), we explained that "[n]ot every reference to the exercise of the right to remain silent is an error requiring reversal." The factors to be considered are:

"(1) Whether the comment referred specifically to the defendant's failure to take the stand or to rebut the evidence against him . . . . (2) Whether the trial judge, after objection was made, gave a cautionary instruction to the jury to disregard the comments or the remarks relating to the failure of the accused to testify . . . . (3) Whether the prosecutorial comments were aggravated or repetitive . . . . (4) Whether the defendant was the only person who could refute the evidence which caused the comments to be directly pointed at the accused . . . ."

*People v. Todd,* 189 Colo. 117, 538 P.2d 433 (1975).

◼ Here, the prosecution did not specifically state that the defendant did not take the stand to rebut the evidence against him; rather, it merely commented on the evidence as uncontradicted. And, even without being requested to do so, the trial court gave a cautionary instruction regarding defendant's silence. Moreover, we do not regard the comments as overly repetitive or aggravated. Thus, as a matter of law, the prosecution did not infringe the defendant's right to remain silent in a constitutionally impermissible manner.

## II.

Defendant also contends that the prosecution's questions regarding the victim's virginity, coupled with the refusal of the trial court to allow cross-examination regarding the drive-in incident, violated the defendant's right to confront the witnesses against him, and that the questions asked by the prosecution were inadmissible under Colorado's "Rape Shield" statute, § 18–3–407, C.R.S.1973 (1978 Repl.Vol. 8). We disagree and hold that the prosecution's questions were in conformance with the statute, and that no constitutional violation resulted.

The "Rape Shield" statute presumes as irrelevant:

"(1) Evidence of specific instances of the victim's prior or subsequent sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct . . . except: (a) Evidence of the victim's prior or subsequent sexual conduct with the actor; (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant."

Section 18–3–407, C.R.S.1973 (1978 Repl. Vol. 8).

◼ The basic purpose of this statute is to protect rape and sexual assault victims from humiliating public "fishing expeditions" into their past sexual conduct, without a showing that such evidence would be relevant to some issue in the pending case. *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978). It does not specifically prohibit the victim from testifying as to the *lack* of prior sexual activity. Thus, we do not consider either the prosecution's examination of the victim or the prosecution's comments regarding the victim's prior virginity to be improper under the statute. *See Forrester v. State,* 440 N.E.2d 475 (Ind.1982) (similar statute held not to prohibit prosecution's introduction of evidence regarding victim's prior virginity); *Jenkins v. State,* 156 Ga. App. 387, 274 S.E.2d 618 (1980).

◼ Moreover, the statute does not deny a defendant's right to confront his accuser. *People v. McKenna, supra.* Certain exceptions are made within the statute to preserve such rights of the defendant. One of those exceptions concerns the source and origin of semen. Section 18–3–407, C.R.S.1973 (1978 Repl.Vol. 8). Here, the

trial court properly allowed evidence concerning the source of semen found on the victim's jeans. The statute makes no exception for the victim's prior statements regarding the possible source of that semen. Introduction of evidence regarding the details of the drive-in incident is prohibited under the statute as "evidence of specific instances of the victim's prior or subsequent sexual conduct ...." Section 18–3–407, C.R.S.1973 (1978 Repl.Vol. 8).

### III.

 Defendant next argues that the trial court committed reversible error by failing to define "force" in its instructions. We disagree. In *People v. Crawford*, 183 Colo. 166, 515 P.2d 631 (1973) our Supreme Court held that an instruction on aggravated robbery which contained the word "force," with no further definition, was written in "plain understandable English." We hold the same reasoning applies to the element of force under the statute dealing with first degree sexual assault. Section 18–3–402(1)(a), C.R.S.1973 (1978 Repl.Vol. 8).

### IV.

Defendant also argues that the trial court's refusal specifically to include "consent" in the defendant's theory of defense constitutes reversible error. We disagree.

Defendant is entitled to an instruction on his theory of the case only if the evidence supports such an instruction. *People v. Montague*, 181 Colo. 143, 508 P.2d 388 (1973). Here, the evidence presented does not support a defense of consent.

Defendant contends that because the victim consented to the ride home, and because she did not attempt to escape prior to stopping at the look-out point, sufficient evidence was presented to send the issue of consent to the jury. Nowhere in the record can one find any evidence that the victim consented, either explicitly or implicitly, to sexual intercourse. Under these circumstances, we perceive no error.

Moreover, an instruction which is phrased in the language of the statute is sufficient. *People v. Bowen*, 182 Colo. 294, 512 P.2d 1157 (1973). Here, the instruction given was phrased in language almost identical to the statute.

Defendant's remaining contentions of error are without merit.

Judgment affirmed.

KELLY and COYTE,* JJ., concur.