Carlos FLETCHER, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 05SC646.

Supreme Court of Colorado,
En Banc.

April 23, 2007.

As Modified on Denial of Rehearing
May 14, 2007.*

* Justice Eid does not participate.

Douglas K. Wilson, Colorado State Public Defender, Tracy C. Renner, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

### Introduction

This case arises from defendant Carlos Fletcher's conviction of class four felony sexual assault, victim incapable, under section 18–3–402(1)(b), C.R.S. (2002),[1] after a jury trial. The court sentenced Fletcher to three years in the Department of Corrections followed by an indeterminate period of parole.

We granted certiorari to review the court of appeals' unpublished opinion in *People v. Fletcher*, No. 03CA0154 (Colo.App.2005),

2005 WL 1356935. The court of appeals affirmed Fletcher's conviction and sentence after reviewing several issues, one of which we now consider—the admissibility of the victim's testimony concerning her lack of sexual experience (virginity) prior to the assault when offered to prove the source of a vaginal injury. Addressing the limited question of whether the rape shield statute prohibits a victim from testifying as to her lack of prior sexual activity, the court of appeals concluded that it does not. Thus, it held that the trial court did not abuse its discretion when it admitted the evidence of the victim's virginity. We disagree, but hold the evidence inadmissible on different grounds.

Our decision in this case does not determine whether the rape shield statute bars the admission of the evidence in this case and thus, we leave the resolution of this issue for another day. The rules of evidence, specifically those addressing the relevance of evidence—C.R.E. 401, 402, and 403—dictate the result we reach. We focus our analysis on whether evidence of the victim's virginity is sufficiently probative of the issue for which it was proffered to outweigh its prejudicial effect, where it was offered to show that the defendant was the source of the victim's vaginal tear.

To be probative, evidence of previous sexual activity must have occurred close enough in time to the alleged assault so that the injury from that previous experience would not have otherwise healed. Evidence of sexual activity or lack of sexual activity dating so far back that an injury would not still exist is too remote to be probative of the source of the victim's vaginal tear. Because evidence that a victim is a virgin spans such a lengthy period of time it includes this non-probative evidence and thus, is too broad and over-inclusive to be admissible given its prejudicial effect. Any probative value this evidence may have is substantially outweighed by its prejudicial effect under C.R.E. 403. Hence, we hold that rules 401, 402, and 403 bar the admission of the victim's testimony regarding her virginity in this case because its prejudi-

---

1. Section 18–3–402(1)(b) provides: "(1) Any actor who knowingly *inflicts sexual intrusion or sexual penetration on a victim commits sexual* assault if ... [t]he actor knows that the victim is *incapable of appraising the nature of the victim's* conduct."

cial effect substantially outweighs its minimal probative value.

Because we conclude that the victim's testimony that she had never had sex before the assault was inadmissible, we hold that the trial court abused its discretion when it admitted testimony regarding the victim's lack of previous sexual experience (virginity). Nonetheless, our review of the record leads us to conclude that this error was harmless, and hence, we affirm the judgment of the court of appeals albeit on different grounds.

## II. Facts and Procedural History

The sexual assault occurred on New Year's Eve at a party hosted by the defendant, Carlos Fletcher, his fiancée, and his roommate. Alcohol was served and most of the guests were drinking that evening. The victim,[2] a guest at the party, had several drinks at the beginning of the party and became intoxicated. Other witnesses confirmed that she vomited several times and had to be helped to bed in the basement before the party was over.

At trial, Fletcher and the victim recounted their subsequent encounter differently. According to the victim, she did not remember much from the evening as a result of her intoxication. The victim claimed she vaguely remembered someone being on her back and that she was then awakened by Fletcher's fiancée's "blood curdling shriek" when she found Fletcher engaging in sexual intercourse with the victim.

Fletcher admitted to having sex with the victim but stated it was consensual. He testified that when he went to the basement to use the Internet, the victim called him over to her, they kissed, and then engaged in consensual sex. He said she did not seem intoxicated and appeared to know what was happening.

No one else witnessed the initiation of the sexual act. However, other witnesses confirmed that the victim was intoxicated when she went to sleep; that she was not covered up after the sexual act; that she had her underwear around her ankles; and that

twenty minutes after the sexual act she was "not lucid." Approximately twenty minutes after the sexual act, two partygoers helped the victim gather her belongings and leave.

The victim reported the assault to the police the next day after she was told what happened. She then agreed to a rape kit exam in which the doctor found a small laceration or tear of her vaginal opening. At trial, the doctor testified that this tear was consistent with non-consensual sex.

On the second day of trial the People asked the victim about her previous sexual history, arguing that it was relevant to establish that the defendant was the source of her vaginal injury:

People: When you went downtown did a doctor examine you?

Victim: He did.

People: Did you suffer any injuries?

Victim: I had a small tear in my vagina.

People: Had you had sexual intercourse with anybody other than the defendant on that day?

Victim: No, no.

People: Had you ever had sexual intercourse before that day?

Victim: No.

Fletcher objected and moved for a mistrial claiming this reference to the victim's virginity violated the rape shield statute, was irrelevant, prejudicial, and an impermissible introduction of character.

The People argued that the question was relevant to establish that the defendant was the source of the vaginal tear. "That's why I asked had she had any sex with anybody that day, or had she ever had sex before, to show that the only one that would have had an opportunity to cause a vaginal tear was the defendant." The People also referred the court to *People v. Johnson*, 671 P.2d 1017, 1020–21 (Colo.App.1983), in which the court held that Colorado's rape shield statute does not bar the admission of evidence of lack of sexual activity.

---

**2.** The record does not indicate the age of the victim. However, she did testify that she had graduated from college a few years earlier. This indicates that she was at least in her twenties.

The court initially concluded that the statement regarding the victim's virginity was not relevant and stated it would "tell the jury to disregard her statement." Later, after reviewing *Johnson*, the court overruled the objection, ruling that the evidence was relevant and admissible. The court did not give a limiting instruction.

While the People argue otherwise, it appears that the People made a veiled, indirect comment on the victim's virginity when telling the jury to use its common sense to determine whether the victim, who had testified that she had never had sex before, would have consented to sex in the manner that the sex occurred:

> Ladies and Gentlemen, I ask you to use your common sense. Knowing what you know about [the victim], would she seduce this man and ask him to have sex with her, as he put it, doggie style, on New Year's Eve of last year? Use your common sense, think about what you heard her say on the stand about herself. Think about the defendant.

After the jury was dismissed, Fletcher objected and moved for a mistrial, arguing that the People were offering evidence of the victim's virginity to emphasize the victim's good character in contrast to the defendant's bad character. The trial court denied the motion for a mistrial, finding that the People's argument did not refer to the victim's sexual history or her good character, but instead referenced the fact that she never expressed any interest in Fletcher.

Following the trial, Fletcher again challenged the admission of the victim's testimony on direct appeal. The court of appeals also relied on the *Johnson* case, concluding that the admission of evidence of the victim's virginity did not violate the rape shield statute. The court did not address whether the

evidence was admissible under the rules of evidence. We granted certiorari on two issues to address whether this evidence violated either C.R.E. 404, 402, or 403, or the rape shield statute.[3] We now address the relevance of this evidence.

## III. Analysis

■■■ Courts are wary to allow the introduction of a victim's sexual history in sexual assault trials. *See People ex rel. K.N.*, 977 P.2d 868, 874 (Colo.1999). Colorado's rape shield statute precludes the introduction of much of this evidence by deeming it presumptively irrelevant. § 18–3–407, C.R.S. Even evidence falling within an exception to the rape shield statute is not automatically admissible. *People v. Dembry*, 91 P.3d 431, 437–38 (Colo.App.2003). This evidence remains subject to the usual rules of evidence. *Id.*

This Court has never addressed the admissibility of testimony regarding a victim's lack of sexual conduct or virginity. The court of appeals addressed the introduction of a victim's virginity in *Johnson*, 671 P.2d at 1020–21, concluding that the rape shield statute does not specifically bar evidence of lack of sexual activity. Fletcher argues that the *Johnson* holding is flawed and should not be followed by this Court.

We do not reach this argument because we apply C.R.E. 401, 402, and 403 and conclude that in this case, the trial court should not have admitted the evidence of the victim's virginity because it was so over-inclusive that its prejudicial nature outweighed its probative value. Since the evidence of the victim's virginity fails the threshold test of relevancy, we need not reach Fletcher's contentions that the rape shield statute and C.R.E. 404 also bar the admission of this evidence.[4]

**3.** The first issue we granted certiorari on was: "Whether evidence of an alleged victim's virginity in a sexual assault trial is inadmissible character evidence pursuant to C.R.E. 404(a)(2), inadmissible because it is irrelevant pursuant to C.R.E. 402, or unfairly prejudicial pursuant to C.R.E. 403."

The second issue we granted certiorari on was: "Whether evidence of an alleged victim's virginity constitutes 'prior sexual conduct,' that is presumptively irrelevant and inadmissible under

Colorado's Rape Shield Statute, section 18–3–407(1), C.R.S. (2005), and whether the proponent of such evidence must comply with the notice and hearing provisions of the statute."

**4.** Fletcher argues that the People's statements in the rebuttal closing violate C.R.E. 404 by introducing impermissible character evidence. The People asked the jurors to:

> use [their] common sense. Knowing what [they knew] about [the victim], would she se-

## C.R.E. 401, 402, and 403

■ Only relevant evidence is admissible. C.R.E. 402. If evidence is relevant, it is admissible unless its prejudicial effect substantially outweighs its probative value. C.R.E. 403; *People v. Carlson,* 712 P.2d 1018, 1021 (Colo.1986). To be relevant, evidence must have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable. C.R.E. 401. This definition contains two requirements: that the evidence be material and have probative value. *Carlson,* 712 P.2d at 1021; 1 *McCormick on Evidence* § 185, at 729 (Kenneth S. Brown ed., 6th ed.2006).

■ Materiality concerns the relation between the propositions that the evidence is offered to prove and the issues in the case. *Carlson,* 712 P.2d at 1021; *McCormick on Evidence, supra,* at 729. To be material, the evidence must relate to a "fact that is of consequence to the determination of the action." C.R.E. 401; *Carlson,* 712 P.2d at 1021. We necessarily look to the elements of the crime charged to make this determination. *Carlson,* 712 P.2d at 1022.

■ Here, the People argue that it offered the evidence of the victim's virginity to prove that Fletcher was the source of the victim's vaginal tear. Because the establishment of this fact is material in a sexual assault case to prove an element of the crime, that the defendant sexually penetrated the alleged victim, we focus our relevance analysis on whether this evidence was probative of that fact. *See* § 18–3–402(1)(b).[5]

■ If the evidence is material, the next question centers on logical relevancy or probative value. *Carlson,* 712 P.2d at 1021. To have probative value, evidence must have a tendency to prove the proposition for which it is offered. C.R.E. 401; *Carlson,* 712 P.2d at 1021. While direct evidence always satisfies this requirement, circumstantial evidence[6] may not be probative. *McCormick on Evidence, supra,* at 734. Such evidence may be too remote to be probative. *Id.* at 732. Remoteness relates not only to the passage of time, but also to the likelihood of intervening factors which undermine the reasonable inferences to be drawn from the evidence. *Id.*

■ Generally, remoteness in time affects only the weight to be given evidence, not its admissibility. *People v. Gladney,* 194 Colo. 68, 71, 570 P.2d 231, 233 (1977); *People v. Trefethen,* 751 P.2d 657, 659 (Colo.App. 1987). However, evidence which is too remote either in time or logical relation to a matter in dispute should not be admitted. *See Echave v. Grand Junction,* 118 Colo. 165, 169, 193 P.2d 277, 279 (1948); *Mariani v. Rocky Mountain Hosp. & Med. Serv.,* 902 P.2d 429, 436 (Colo.App.1994).

■ The question of whether evidence is too remote is within the trial court's discretion, *Wilkinson v. People,* 170 Colo. 336, 341, 460 P.2d 774, 777 (1969), as is the question of whether this evidence, if relevant, is admissible under C.R.E. 403. *People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995). We review a trial court's factual determination as to the admissibility of evidence for an abuse of discretion. *Id.; People v. Harris,* 43 P.3d 221, 225 (Colo.2002). We will not overturn an evidentiary ruling by the trial court unless the ruling was manifestly arbitrary, unrea-

duce this man and ask him to have sex with her, as he put it, doggie style ... Use your common sense; think about what you have heard her say on the stand about herself.

Despite the trial court's ruling otherwise, it appears that the People were suggesting that the victim, previously established to be a virgin by what she said "on the stand about herself," would have acted "in conformity with" this character for chasteness. Having determined that the evidence of the victim's virginity was irrelevant, we need not reach this issue.

**5.** Section 18–3–402(1)(b) requires proof of sexual penetration:

(1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if ... [t]he actor knows that the victim is incapable of appraising the nature of the victim's conduct.

It does not require proof that the actor used force.

**6.** Circumstantial evidence requires additional reasoning beyond the facts established to reach the desired conclusion. *McCormick, supra,* at 734.

sonable, or unfair.; *Medina v. People*, 114 P.3d 845, 859 (Colo.2005); *Harris*, 43 P.3d at 225; *Gibbens*, 905 P.2d at 607.

 The People argue that they were entitled to present evidence establishing that Fletcher was the source of the victim's injuries because this was a highly relevant fact central to the their case. Although this evidence was material to the People's case, the People advance no additional argument as to why the specific evidence proffered, the victim's virginity, is sufficiently probative of the fact that Fletcher was the source of the injury.

 The victim's sexual activity or lack of sexual activity before a sexual assault is circumstantial evidence which may be probative of the fact for which it is offered. We have held that evidence of sexual activity immediately prior to an alleged assault may be relevant to establish that someone else may have been the source of an injury. *Harris*, 43 P.3d at 226 (previous sexual contact may be admissible to contest that the defendant was the source of a vaginal injury); *see also People v. Martinez*, 634 P.2d 26, 31 (Colo.1981) (previous sexual contact is admissible to contest that the defendant was responsible for the presence of sperm). Under analogous reasoning, we acknowledge that evidence that a victim did not have sexual contact with anyone else immediately before an alleged assault may make it more probable that the perpetrator of the sexual assault was the source of the sexual injury. However, the fact that this evidence of lack of sexual conduct may be probative as to the source of a sexual injury under certain circumstances does not render it admissible in all circumstances.

 The probative value of evidence of lack of sexual activity as it relates to the source of a victim's sexual injury depends on how much time it would take for such an injury to heal. Evidence too remote in time does not inform the question of who is the source of the current injury. For example, evidence that an individual did not have sex at a time so far in advance of an alleged assault such that even if the victim had engaged in sexual activity, any sexual injury from that previous sexual encounter would not still be present, would be too remote to be probative.

We do not have the medical competency to determine the precise amount of time that must pass before rendering such evidence devoid of its probative value. In many cases, this will be an issue that falls within the ambit of expert testimony at trial. The facts of this case do not, however, require such analysis. Here, the question is simply whether the fact that the alleged victim, who was at least in her twenties, had never had sex before the date of the assault is admissible to establish the source of her vaginal injury. We conclude that it is not.

Because a victim's virginity spans such a lengthy period of time, it includes remote, non-probative evidence of lack of sexual activity and thus is too broad and over-inclusive to be admissible in light of its prejudicial effect. Evidence of virginity is prejudicial because it suggests that the defendant "deflowered" a victim and may evoke jurors' sympathy and moral judgment.[7] A victim's virginity is only minimally probative to establish that the victim has not engaged in sexual activity during the period of time where had the victim engaged in sexual activity it would be possible that someone else could have been the source of the current injury. Evidence of virginity is not at all probative when it speaks to the evidence of lack of sexual activity before the healing period. Further, the admission of this over-inclusive evidence is unnecessary because a victim's lack of sexual activity during the probative time period can easily be established through more pointed questioning. Hence, even when we afford this evidence its maximum probative value and minimum unfair prejudice, the marginal relevance of this evidence is strongly outweighed by the danger of unfair prejudice under C.R.E. 403. *See Gibbens*, 905 P.2d at 607 ("an appellate court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reason-

---

7. The People admit that it "is conceivable that a juror might consider sexual assault perpetrated against a virgin to be an even more serious offense."

ably expected"). For this reason, we hold that virginity was not admissible to establish the source of the victim's vaginal injury and therefore, the trial court abused its discretion by admitting this evidence.

We now turn to the question of whether this error requires reversal.

### Harmless Error Analysis

When a party objects to a trial court's erroneous evidentiary ruling, that ruling will be reviewed for harmless error. *Medina*, 114 P.3d at 857. A ruling wrongfully admitting or excluding evidence is not reversible but is considered harmless when the error did not substantially influence the verdict or impair the fairness of the trial. *People v. Stewart*, 55 P.3d 107, 124 (Colo. 2002) (citing C.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."); C.A.R. 35(e) ("The appellate court shall disregard any error or defect not affecting the substantial rights of the parties."); and Crim. P. 52 ("Any error ... which does not affect substantial rights shall be disregarded.")).

Here, defense counsel objected and moved for a mistrial twice: immediately after the People initially introduced evidence of the victim's virginity during the direct examination of the victim and immediately following the People's rebuttal closing. Hence, we must determine whether the admission of this evidence was harmless. We conclude that it was.

Our review of the record indicates that the admission of the victim's virginity did not have a substantial effect on the verdict or impair the fairness of the trial. The jury convicted Fletcher of sexual assault, victim incapable. Fletcher admitted that he had sex with the victim. As argued by Fletcher, the only issue at trial was whether Fletcher knew the victim was incapable of consenting because she was too intoxicated. The victim's virginity had no effect on this issue.

In addition to the victim's testimony that she was too intoxicated to have consented to the sexual act, several other witnesses corroborated that she was intoxicated both be-

fore and after the sexual act. Witnesses described her condition before the sexual act, stating that she vomited several times, needed help getting downstairs to bed, and "passed out." Several witnesses also described her condition after the sexual act as being consistent with continued intoxication. They stated that she "was lying face down, and she wasn't covered up" after the sexual act, in need of support to walk to leave, "not lucid," "still completely out of it," and "still was not really all there." This evidence of the victim's intoxication both before and after the sexual act supports the jurors' decision that the defendant knew the victim was incapable of consenting to the sexual act. This finding of fact is not affected by whether the victim was a virgin or not.

Further, testimony regarding the victim's intoxication pervaded the trial, not evidence of the victim's virginity. The only two references to the victim's lack of sexual experience were the victim's initial testimony on direct examination and the People's subsequent indirect reference to it during rebuttal closing argument.

Accordingly, we conclude that the trial court's error in admitting the testimony regarding the victim's lack of sexual history was harmless.

### IV. Conclusion

Because we conclude that the victim's testimony that she had never had sex before the assault was inadmissible, we hold that the trial court abused its discretion when it admitted testimony regarding the victim's lack of previous sexual experience (virginity). Nonetheless, our review of the record leads us to conclude that this error was harmless, and hence, we affirm the judgment of the court of appeals albeit on different grounds.

Justice EID does not participate.