23CA0481 Peo v Gerle 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0481 Douglas County District Court No. 21CR1064 Honorable Patricia D. Herron, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Donald Louis Gerle, Defendant-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division VII Opinion by JUDGE GOMEZ Kuhn and Richman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Philip J. Weiser, Attorney General, Jaycey D. DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Fuller & Ahern, P.C., Brian M. Close, Parker, Colorado, for Defendant-
Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Defendant, Donald Louis Gerle, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree assault, second degree assault, and false imprisonment. We reverse and remand for a new trial. I. Background A. The Factual Allegations ¶ 2 Gerle and the victim — Gerle’s wife — were married for over twenty-five years and, at the time of the charged conduct, had two teenage children living at home. The conduct occurred over the course of a weekend, during which, according to the victim, Gerle confined her to their bedroom closet and violently assaulted her, causing severe injuries. The victim admitted this was the first time Gerle had ever been violent with her. ¶ 3 The couple began arguing on Thursday evening. The victim said that Gerle became angry when she couldn’t remember the last name of someone she’d dated thirty years earlier. During that argument, Gerle allegedly threw a Pringles can at her, bruising her thigh. The argument subsided that night but picked back up again the following afternoon. When the victim still couldn’t remember the last name of the person she’d dated, Gerle allegedly hit her on 
2 the legs with a camera tripod. The couple moved upstairs to their bedroom where they continued arguing, at that point concerning the victim’s inability to remember the name of a book she’d read. Gerle allegedly straddled the victim on the bed and hit her, bruising her face and splitting her lip. ¶ 4 The argument picked back up again on Saturday afternoon in the couple’s bedroom. At some point, they ended up in their walk-
in closet. The victim said that over the course of the next fourteen hours, Gerle confined her in the closet and hit her all over her body with a variety of objects, including his hand, hangers, a belt buckle, a pair of steel toe boots, and a magnifying glass. She also said that Gerle had her phone during most of this time but briefly returned it to her so she could text a friend about covering her duties at church on Sunday morning. ¶ 5 The victim reported that throughout the weekend, Gerle was using cocaine and drinking alcohol, which he repeatedly dumped over her head. At some points, she also voluntarily used cocaine; at other points, Gerle allegedly forced her to use it. She may also have consumed some alcohol. 
3 ¶ 6 According to the victim, Gerle finally left the closet and went to bed early Sunday morning. She tried to escape while he was sleeping but was too injured and kept losing consciousness. She eventually joined Gerle in bed, where she stayed all day. Late that night, she got up while Gerle was in the bathroom, slid herself down the stairs, and drove herself to the hospital. ¶ 7 The victim was treated for two black eyes, a collapsed lung, and two broken ribs. She had bruises on her face, behind her ears, across her back and torso, and on her legs and feet. She also had a puncture wound on her ankle, which later became infected and required multiple surgeries to remove the resulting abscess. B. The Trial ¶ 8 Gerle was charged with first degree assault for assaulting the victim with steel toe boots as a deadly weapon, second degree assault for assaulting the victim, and false imprisonment for confining the victim. ¶ 9 At trial, Gerle attempted to raise as his theory of defense that the incident was (or at least started as) a consensual role-play encounter involving bondage, discipline, dominance, submission, sadism, and masochism (BDSM). 
4 ¶ 10 Defense counsel tried to introduce this theory during his opening statement, stating, Things aren’t always what they seem. You’ll learn that when [the couple] were alone, all by themselves, when no one was looking, they lived a different lifestyle, a lifestyle that they’ll probably be embarrassed, if not ashamed, to have to publish to a jury of their peers. A lifestyle that was different than the lifestyle that they portrayed to their children and to their community. You’ll hear about the use of cocaine during that weekend and the days leading up to that weekend. You’ll learn about [the couple]’s ongoing and regular sexual fantasy role-playing. The prosecutor objected on the basis that the defense hadn’t complied with the notice requirements of the rape shield statute, section 18-3-407, C.R.S. 2023. ¶ 11 Defense counsel responded that the rape shield statute didn’t apply because Gerle wasn’t charged with a sexual crime and the victim wasn’t a sexual assault victim. He also explained that the defense intended to introduce evidence that the couple had texted each other in the week leading up to the charged conduct about a planned, consensual BDSM role-playing encounter that would involve sixteen whippings. This evidence, he argued, was relevant to the issues of consent and intent. 
5 ¶ 12 The trial court sustained the objection based on the rape shield statute, struck the objected-to portion of defense counsel’s argument, and ordered the jury to disregard it. Defense counsel then concluded the opening statement without making any reference to BDSM activities. ¶ 13 Later that day, defense counsel proffered an exhibit containing the referenced text messages between Gerle and the victim from the Monday before the charged conduct. In the text messages, Gerle repeatedly asked the victim for the name of a book she’d mentioned and accused her of lying about it. She eventually sent him a screenshot of an erotic novel. Gerle responded, “Good PET . Now SIR has to check the date and story line to make sure ur not lieing , but if not your punishment will be much less. You still need to b whipped on the back 16 times for your Disobedience – SIR.” She replied, “Thank you SIR[,] PET deserves whatever SIR delivers.” He asked her again for the name of the book she’d mentioned, and the following exchange ensued: The victim: Three Simple Rules ( the blindfolded club) The victim: The rules are: 1. Girl can’t ask questions 
6 2. Girl answers SIRS questions HONESTLY 3. No orgasm without permission Gerle: Those 3 rules will b in our SUB / DOM contract. W a list of punishments for breaking The victim: Yes, SIR . . . . Gerle: I still have a hard on from u telling me about that story. Its date is right, but u still have some lashes coming. The victim: I am looking forward to them SIR The victim: PET is waiting for SIR . . . . The victim: I have never felt desire like I do now. You have awakened a monster Gerle: Please dont keep turning me on. SIR needs to rest his parts . But I feel the same way. . . . . Gerle: SIR needs to know what makes PET hot. The victim: Besides what SIR already knows. The victim: PET gets hot with anticipation of what’s coming. PET just realized she likes the soft whip 
7 The victim: PET like talking dirty with SIR The victim: PET likes almost getting caught Gerle: U haven’t felt anything yet. The real fun will begin when ur ready to tell me ur deepest dirtiest fantasys w no fear of judgement from SIR. Nothing turns me on more than hearing u talk about real or imagined sex stories. . . . . Gerle: I think i will get that lock box u suggested. U can start by writeing about what goes on in your naughty head. The victim: Yes, please Gerle: Didnt i ask PET not to turn me on? The victim: I’m sorry SIR Gerle: U still sound horny PET. I can see why u liked this Three Simple Rules book. Now write a story about a hot wife who has a secrete prostitute fantasy. Part truth part fiction. . . . The victim: Yes SIR. What is the due date please? Gerle: I want it by Friday . . . . The victim: Yes, SIR. . . . . 
8 The victim: Love you. Being away from you is worse than a whip The victim: I serve one Master. You know that. I love you. Gerle: And i serve one amazing , beautiful , Hot Wife . Submissive / PET The victim: Thank you SIR ¶ 14 The court agreed to review the text messages, accept briefs on the applicability of the rape shield statute, and research the issue before the proceedings the next day. ¶ 15 That evening, defense counsel filed a combined brief on the applicability of the rape shield statute and motion for a mistrial. In addition to reiterating the defense’s arguments as to why the statute didn’t apply, counsel argued that the effect of the court’s restriction of his opening statement and its instruction to the jury to disregard his theory of the case had prejudiced the defense, establishing grounds for a mistrial. ¶ 16 The next day, the trial court denied the motion for a mistrial without revisiting its ruling on the rape shield statute. The court also ruled that defense counsel could ask the victim in cross-
examination whether the charged conduct was consensual but would be stuck with the victim’s answer. The court added that 
9 defense counsel could ask the victim about the text messages and use them for impeachment if he could “connect [them] to the timeframe that’s relevant to these charges” — “in other words, . . . if the[] [texts] relate to the dates and times charged.” But, the court continued, “[i]f [they’re] not related” and the victim “says, ‘No, . . . we were talking about this ahead of time, what happened that night is totally separate,’ then [he would be] stuck with that answer.” The court further ruled that “[w]hether or not they had engaged in prior sexual role-playing that involved beating, that left bruises and other physical injuries is not relevant.” ¶ 17 In cross-examining the victim, defense counsel started to ask, “[I]s it true that you and Mr. Gerle engaged in consensual whipping that week leading up to —” when the prosecutor objected. The court sustained the objection, ruling that defense counsel could only ask whether Gerle and the victim engaged in such conduct on the dates of the charged conduct — not whether they had done so previously. Defense counsel then asked the victim whether she and Gerle had consented to any whipping during the charged incident, and she responded “No, not whipping, not like he did to me.” She went on to say that they “had a cat and nine tails thing” that they 
10 would use “gently” but “weren’t engaged in that during these days.” As the court had ordered, defense counsel didn’t ask any follow-up questions at that time. ¶ 18 Defense counsel later asked the victim about text messages she’d sent to Gerle on that Friday morning — which aren’t included in the record — saying that she wanted every night to be like last night and that she’d never felt more important, loved, and desired by him as she had then. She acknowledged that she had sent the texts but said she didn’t recall sending them or know what they were referencing. Defense counsel moved to admit the texts as prior inconsistent statements, but the court sustained the prosecutor’s objection based on a lack of foundation authenticating the texts as having been sent by the victim. ¶ 19 Gerle didn’t testify at trial. ¶ 20 The jury convicted Gerle of the three charged offenses. It also found, in conjunction with a crime of violence sentence enhancer, that Gerle had caused serious bodily injury as to both assault offenses. The trial court sentenced Gerle to a total term of twenty-
two years’ imprisonment. 
11 C. This Appeal ¶ 21 On appeal, Gerle contends that (1) the trial court erred by concluding that the rape shield statute applies and consequently limiting defense counsel’s opening statement; (2) the trial court erred by denying his request for a mistrial based on misapplication of the rape shield statute; (3) the trial court erred by improperly excluding evidence during cross-examination of the victim; (4) the cumulative effect of these errors warrants reversal; and (5) the trial court erred in imposing his sentence. ¶ 22 We start by addressing Gerle’s first and third contentions of error. Because we conclude that the court erred in both respects and that the cumulative effect of those two errors warrants reversal, we reverse the judgment and remand the case for a new trial. We then briefly address some of Gerle’s other contentions that are likely to arise on remand and decline to consider the others as moot. II. Limitations on Opening Statement ¶ 23 Gerle contends that the trial court erred by limiting defense counsel’s opening statement based on a misapplication of the rape shield statute. We agree. 
12 ¶ 24 We review de novo determinations about the applicability of the rape shield statute. People v. Orozco, 210 P.3d 472, 478 (Colo. App. 2009). We review for an abuse of discretion limitations a trial court places on opening statements. People v. Harmon, 284 P.3d 124, 129-30 (Colo. App. 2011). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on an incorrect understanding of the law. People v. Owens, 2024 CO 10, ¶ 65. ¶ 25 We conclude that the trial court erred by determining that the rape shield statute applies to this case. The rape shield statute “applies only when either the witness is a sexual assault victim or the crime charged is a sexual offense.” People v. Carlson, 72 P.3d 411, 419 (Colo. App. 2003); see also People v. Miller, 981 P.2d 654, 657 (Colo. App. 1998) (the rape shield statute didn’t apply where, among other things, “the victim was not a rape victim [and] the defendant was not accused of sexual assault”). The crimes charged in this case — first and second degree assault and false imprisonment — weren’t sexual offenses. And there was no allegation that the victim had been sexually assaulted. Therefore, 
13 the rape shield statute doesn’t apply. Indeed, the People don’t attempt to argue on appeal that it does. ¶ 26 Because the court’s application of the rape shield statute was erroneous, so too were the limits it imposed on defense counsel’s opening statement precluding any mention of BDSM activities. The court didn’t cite any basis for limiting the opening statement other than the rape shield statute; and, as discussed in the next section, the basis the court used for excluding the underlying evidence later in the trial was also erroneous. Thus, the limitations on the defense’s opening statements were erroneous and constitute an abuse of discretion. See Owens, ¶ 65 (a court abuses its discretion if its decision is “based on an incorrect understanding of the law”). III. Exclusion of Evidence ¶ 27 Gerle also contends that the trial court erred by excluding evidence during the victim’s cross-examination — including, in particular, evidence concerning prior and planned BDSM role-
playing encounters. Again, we agree. ¶ 28 We review a trial court’s evidentiary rulings for an abuse of discretion. People v. Hood, 2024 COA 27, ¶ 6. 
14 ¶ 29 Because the rape shield statute doesn’t apply to this case, the trial court’s exclusion of the evidence cannot be upheld on that basis. However, evidence that is improperly excluded under the rape shield statute may still be excluded under general relevance principles. See id. at ¶ 18. ¶ 30 To be relevant, evidence must be both material and probative. Fletcher v. People, 179 P.3d 969, 974 (Colo. 2007). Evidence is material if it relates to a fact that is of consequence to the determination of the action. Id.; see also CRE 401. We look to the elements of the crimes charged to assess materiality. Fletcher, 179 P.3d at 974. Evidence is probative if it tends to prove the proposition for which it’s offered. Id.; see also CRE 401. Relevant evidence is admissible unless another rule or legal provision provides otherwise. CRE 402. For instance, under CRE 403, such evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing or misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. ¶ 31 We conclude that the trial court abused its discretion by declining to admit the BDSM-related evidence under general 
15 relevance principles. In reaching this conclusion, we are guided by People v. Garcia, 179 P.3d 250 (Colo. App. 2007), in which a division of this court reversed based on the exclusion of similar evidence. In that case, the defendant was charged with sexual assault for holding the victim at knifepoint, binding her hands and feet, and forcing her to drink alcohol and perform sexual acts. Id. at 253. The defendant pursued a theory of defense that the victim, whom he’d previously dated, had consented to the conduct. Id. He sought to admit evidence that the victim had a rape fantasy, which they’d acted out multiple times; that they’d previously engaged in bondage and rough sex at her request; and that they’d been intimate as recent as a week before the charged conduct. Id. The trial court excluded this evidence under the rape shield statute and general relevance principles. Id. at 253-54. The division reversed, concluding that the evidence wasn’t barred by the rape shield statute (for different reasons than in this case) and should’ve been admitted under general relevance principles. Id. at 254-58. ¶ 32 Similarly, here, having concluded that evidence of the couple’s prior and planned BDSM role-playing encounters wasn’t subject to the rape shield statute, we now also conclude that such evidence 
16 should’ve been admitted under general relevance principles. The evidence is both material and probative because it relates to facts that are of consequence in determining the action and it tends to prove the victim’s consent and Gerle’s lack of intent. See Fletcher, 179 P.3d at 974. ¶ 33 Because lack of consent is an element of false imprisonment, see § 18-3-303(1), C.R.S. 2023, the victim’s potential consent to being locked in a bedroom closet to engage in BDSM activities is a “fact that is of consequence to the determination of the action.” CRE 401. Likewise, if the incident began as a consensual BDSM encounter, then Gerle may have lacked the intent to confine the victim against her will, which would negate the knowing element of false imprisonment. See § 18-3-303(1). ¶ 34 The issue of consent was less relevant to the assault charges, given the allegations and the jury’s findings that Gerle inflicted serious bodily injury. See § 18-1-505(1)-(2), C.R.S. 2023; People v. Bagwell, 2022 COA 44, ¶ 24. Nonetheless, the excluded evidence was relevant to Gerle’s intent, which was an element of both assault charges. See § 18-3-202(1)(a), C.R.S. 2023 (requiring intent to cause serious bodily injury to establish the type of first degree 
17 assault charged in this case); § 18-3-203(1)(g), C.R.S. 2023 (requiring intent to cause bodily injury to establish the type of second degree assault charged in this case). If the incident began as a consensual BDSM encounter, then Gerle may not have had the intent to cause bodily injury or serious bodily injury to the victim. Instead, the injuries could’ve been recklessly inflicted, as the defense argued at trial. Moreover, the excluded evidence may have suggested that some of the more minor injuries the victim sustained were inflicted with her consent. ¶ 35 Thus, evidence that the couple had previously participated in BDSM role-playing encounters and had just planned another such encounter makes it more probable that the victim consented to at least some of the conduct and makes it less likely that Gerle had the requisite intent for the three charged crimes. See Garcia, 179 P.3d at 256 (evidence of prior discussions about a rape fantasy was relevant because it would enable the defendant to “make a rational argument that his admissions of binding [the victim] and cutting off her clothing were reconcilable with consent, thus supporting his claim of innocence”); id. at 257 (evidence of the previous sexual relationship between the defendant and the victim, including recent 
18 sexual activities and prior acts of bondage and rape fantasy role play, was relevant to establish consent). ¶ 36 Additionally, this evidence isn’t too remote in time to be relevant. While temporal remoteness may factor into the relevance determination, it generally only affects the weight given to particular evidence — not the admissibility of that evidence. See Fletcher, 179 P.3d at 974; People v. Taylor, 804 P.2d 196, 202 (Colo. App. 1990); People v. Trefethen, 751 P.2d 657, 659 (Colo. App. 1987). ¶ 37 Here, the text messages the defense sought to admit, like some of the evidence in Garcia, occurred within a week of the charged conduct. See Garcia, 179 P.3d at 257 (evidence that the defendant and the victim had consensual sex a week before the alleged sexual assault wasn’t too remote in time). More generally, the trial court in this case made essentially the same error the trial court made in Garcia by ruling that only evidence regarding the time period of the charged conduct was relevant and thus excluding as irrelevant evidence of previous consensual conduct between the defendant and the victim. See id. at 253, 256. Much like the division in Garcia, we conclude that such evidence is relevant to the issue of consent, see id. at 255-57, as well as to the issue of intent. 
19 ¶ 38 Furthermore, we conclude that the probative value of this evidence isn’t substantially outweighed by the danger of unfair prejudice, confusing or misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. See CRE 403. Although the trial court didn’t explicitly perform this analysis, we may do so on appeal. See Garcia, 179 P.3d at 257. As we’ve explained, the evidence of prior and planned BDSM role-playing encounters was material and probative of both the victim’s consent and Gerle’s intent. And, as in Garcia, “any possible prejudice to the victim from [the admission of] additional details of her sexual conduct with [Garcia] pales in comparison with the relevance of the particular nature . . . of the relationship.” Id. at 258; see also People v. Vanderpauye, 2023 CO 42, ¶ 6 (“[T]he balance inherent in CRE 403 should be struck in favor of admissibility.”). Nor do we view the evidence as presenting a risk of confusing or misleading the jury, causing undue delay, wasting time, or presenting needlessly cumulative evidence. Thus, the evidence is admissible under CRE 403. ¶ 39 Accordingly, we conclude that the trial court abused its discretion by excluding the BDSM evidence on the basis of the rape 
20 shield statute (to the extent that it was a basis for the trial court’s ruling) and lack of relevance.
1 IV. Cumulative Error ¶ 40 We also conclude that, cumulatively, the two errors we’ve identified warrant reversal of the judgment. ¶ 41 Even when individual errors may be deemed harmless, reversal is required if “the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.” Howard-Walker v. People, 2019 CO 69, ¶ 24 (alteration in original) (quoting People v. Lucero, 200 Colo. 335, 344, 615 P.2d 660, 666 (1980)). Thus, we reverse under the cumulative error doctrine if we’ve “identif[ied] multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not.” Id. at ¶ 25. 1 The People contend that evidence of the text exchange was inadmissible for the additional reason that the victim didn’t provide any inconsistent testimony that would’ve warranted its admission under section 16-10-201(1), C.R.S. 2023, notwithstanding that it included hearsay. But the trial court curtailed the questions defense counsel could ask the victim about BDSM, forestalling the defense’s ability to establish any such inconsistency. 
21 ¶ 42 We decline to resolve the parties’ dispute as to which standard of reversal applies to this case. Even assuming that the less onerous nonconstitutional harmless error standard applies, notwithstanding that the court’s errors may well have precluded Gerle from presenting a defense or conducting a meaningful cross-
examination on material issues, we conclude that reversal is warranted. See Krutsinger v. People, 219 P.3d 1054, 1058, 1061 (Colo. 2009); Garcia, 179 P.3d at 255, 258. Under this standard, reversal is required if the errors “substantially influenced the verdict or affected the fairness of the trial proceedings.” Hagos v. People, 2012 CO 63, ¶ 12 (quoting Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986)). ¶ 43 We conclude that the combined effect of the two errors — limiting defense counsel’s opening statement and excluding evidence of prior and planned BDSM role-playing encounters — substantially influenced the verdict and affected the fairness of the trial proceedings. ¶ 44 Collectively, these two errors undercut the primary theory of defense Gerle had intended to raise at trial: that because they were engaging in consensual BDSM activities, the victim had consented 
22 to at least some of the charged conduct and he lacked the requisite intent for the charged offenses. The combined effect of striking the BDSM-related references from opening statement, instructing the jury to disregard that portion of the opening statement, and excluding BDSM-related evidence at trial prevented Gerle from presenting his alternative explanation for why he and the victim were locked in their closet and why he started striking her. Yet if the incident was (or began as) a consensual BDSM role-playing encounter, then the confinement and some of the injuries may have been inflicted with consent; Gerle may have locked the victim in the closet without any intent to confine her against her will; and Gerle may have injured the victim out of recklessness, rather than an intent to cause bodily injury or serious bodily injury. And if the jury had found consent or lack of intent, it could’ve acquitted Gerle on some or all three of the charges. See People v. Stewart, 2017 COA 99, ¶ 41 (reversing under the cumulative error doctrine where the trial court’s errors “impacted the theory of defense”); Garcia, 179 P.3d at 256-57 (without the excluded evidence related to rape fantasy and bondage, it was “very unlikely that reasonable jurors would have considered the [charged] conduct consensual”). 
23 ¶ 45 Additionally, these errors prevented Gerle from effectively challenging the victim’s testimony and credibility, which were central to the prosecution’s case. Neither the occurrence of the incident nor the fact that Gerle perpetrated it were in dispute; rather, the questions were what exactly happened in the bedroom and closet, whether the victim consented to it, and whether Gerle had the requisite intent for the charged offenses. And because Gerle and the victim were the only eyewitnesses, the prosecution’s case rested almost entirely on the victim’s testimony and credibility. Cf. People v. Cobb, 962 P.2d 944, 950 (Colo. 1998) (“With the two main witnesses being the perpetrator and the victim, the significance of the victim’s credibility to the outcome of the trial cannot be overstated.”). By limiting defense counsel’s opening statement and cross-examination of the victim, the court prevented Gerle from meaningfully challenging the victim’s version of events as well as her credibility.
2 2 The victim’s brief allusion to “a cat and nine tails thing” that the couple sometimes used “gently” but not during the days in question didn’t alleviate the harm. In particular, it didn’t enable the defense to question the victim about her texts with Gerle concerning a planned whipping just a few days before the charged conduct. 
24 ¶ 46 Lastly, the trial spanned only four days. See Stewart, ¶ 40 (courts consider “the length of the trial” when evaluating cumulative error) (citation omitted). The “relatively short” length of the trial “add[s] emphasis to the errors.” Id. at ¶ 42. ¶ 47 Given the nature of the errors, their interrelationship and combined effect, the lack of any remedial efforts to cure the errors, and the short length of trial, we cannot say that the errors didn’t substantially influence the verdict or affect the fairness of the trial. See id. at ¶ 40 (citing considerations for a finding of cumulative error). Therefore, we reverse the judgment and remand the case for a new trial on all three of Gerle’s convictions. V. Other Contentions of Error ¶ 48 We briefly address some of the evidentiary issues raised in the parties’ briefs that are likely to arise on remand in the event of a retrial. See Herrera v. Lerma, 2018 COA 141, ¶ 12. • BDSM evidence: While we conclude that evidence of previous or planned BDSM activities is relevant and is not rendered inadmissible by CRE 403, we don’t address any other bases — like hearsay, lack of authentication, or 
25 other objections — that may be raised to exclude or limit such evidence in a new trial. • The victim’s Friday morning texts saying that she wanted every night to be like last night and that she’d never felt more important, loved, and desired by Gerle: These texts are relevant to the issues of consent and the victim’s credibility, and their probative value is not substantially outweighed by the danger of unfair prejudice or other concerns. See CRE 401, 403. But because these texts may be presented in a different way in any retrial, we don’t determine whether the trial court erred by concluding that they hadn’t been properly authenticated in the first trial. We also don’t determine whether the texts or statements concerning them may be excluded at any retrial on other bases, such as hearsay concerns. • The victim’s cocaine use: Evidence that the victim voluntarily used cocaine prior to and during the charged incident is relevant to the victim’s credibility (given her statements to investigators that she had never used cocaine voluntarily but had been forced to do so during 
26 the charged incident) and whether the victim consented to any of the charged conduct; its probative value is not substantially outweighed by the danger of unfair prejudice or other concerns; and it is not improper other acts evidence. See CRE 401, 403, 404(b). We don’t determine whether any specific texts or other statements concerning cocaine use may be excluded at any retrial on other bases, such as authentication or hearsay concerns. • The victim’s alcohol consumption: Evidence that the victim voluntarily consumed alcohol prior to and during the charged incident is relevant to the victim’s credibility (given her contradictory statements as to whether she consumes alcohol and whether she consumed any during the time of the charged incident) and may potentially be relevant to whether the victim consented to any of the charged conduct; its probative value is not substantially outweighed by the danger of unfair prejudice or other concerns; and it is not improper other acts evidence. See CRE 401, 403, 404(b). We don’t determine whether any specific statements concerning alcohol use may be 
27 excluded at any retrial on other bases, such as authentication or hearsay concerns. ¶ 49 Gerle’s contentions regarding his motion for mistrial and his sentence are moot, so we decline to address them. See People v. Baker, 2019 COA 165, ¶ 31 (declining to address a sentencing challenge that was mooted by the division’s decision to reverse and remand the relevant convictions for retrial), aff’d on other grounds, 2021 CO 29. VI. Disposition ¶ 50 The judgment is reversed, and the case is remanded for a new trial. JUDGE KUHN and JUDGE RICHMAN concur.