The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Donald L. GARCIA, Defendant–Appellant.

No. 05CA0016.

Colorado Court of Appeals, Div. IV.

Oct. 4, 2007.

As Modified on Denial of Rehearing Nov. 21, 2007.

Certiorari Dismissed Jan. 29, 2008.

John W. Suthers, Attorney General, Alexander C. Reinhardt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Donald L. Garcia, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault (F2), § 18–3–402(1)(a), C.R.S.2007, and sexual assault with the use of a deadly weapon

(F4), § 18–3–402(1)(a) & (5), C.R.S.2007. His defense was consent. Because we conclude that the trial court erroneously excluded evidence concerning the sexual relationship between defendant and the victim, we reverse and remand for a new trial.

## I. Background

Defendant and the victim had a troubled but intimate relationship from July 2002 until at least the end of January 2003. According to the victim, she then told defendant that the relationship was over, although she admitted that they remained in contact and occasionally met. According to defendant, the intimate relationship continued, and they had consensual sex about a week before July 21, 2003, the date of the events giving rise to the charges.

Before trial, defendant filed a "Motion to Introduce Evidence of Prior Sexual Conduct of [the victim] pursuant to C.R.S. 18–3–407." The motion referenced both the victim's prior sexual relationship with defendant and her sexual relationships with other men. Defendant argued that this evidence was relevant to consent and was necessary for impeachment. The trial court found, "I don't think there's any of the offer [of proof] that even fits an exception [to the rape shield statute]." *See* § 18–3–407(1), C.R.S.2007.

Defendant sought clarification, arguing, "The Court is not precluding information that is relevant in reference to their relationships, being things they have done together? Because I believe that is an exception to the rape shield statute." The court responded, "I guess it's hard to rule in advance on that particular issue. . . ."

According to the victim's trial testimony, on July 21 she returned to her apartment and noticed defendant in the hallway after she had her key in the door lock. Defendant then turned the key and entered her apartment, saying that he was just there to talk.

After fifteen to twenty minutes of conversation, defendant said, "Well, I guess I'm just going to have to do this," and pulled out a knife. He put the knife to her throat, dragged her into the bedroom by the hair, and threw her on the bed. He then bound her hands behind her back and her ankles with athletic tape. He also produced a bottle of liquor and made her drink some of it. He said, "[W]e're going to have a little party and then you're going to watch me die."

Defendant used the knife to cut off her shirt and bra, pressed the knife to her throat, and forced her to perform fellatio. He then said, "I'm going to do what you've not let me do" or "that you didn't want me to do," which she interpreted to mean anal sex. The victim explained that she was afraid because she did not want to engage in such an act and had never wanted to, and defecated on herself.

After washing her, defendant removed the tape and allowed her to go to the bathroom for a cigarette. They talked further and defendant again said that he intended to kill himself. Defendant then asked the victim if they could engage in sexual intercourse. Although she at first said no, she eventually agreed because of the knife and "his state of being through all this." After they had intercourse, defendant left the apartment. A couple of hours later, the victim contacted a friend, who telephoned the police.

Following the victim's direct testimony, defense counsel sought leave to impeach the victim, and by way of an offer of proof represented that if defendant testified, he would describe the following:

- He and the victim had continued an intimate relationship from January 2003 until about a week before the July 21, 2003 incident;
- He and the victim had engaged in consensual anal sex;
- The victim had a rape fantasy that they had acted out on numerous occasions; and
- They had engaged in bondage and rough sex at her request.

The prosecution responded that the court's pretrial ruling barred such evidence. The trial court ruled that "the prior sexual history that was consensual between the alleged victim here and [defendant] is irrelevant" to show that the victim consented to the acts underlying the charges.

During cross-examination, the victim admitted having told a detective that defendant had also said, "[R]emember your rape fantasy? Well, here it is." But the victim denied ever having had a rape fantasy.

Before defendant testified, the trial court told him during his *Curtis* advisement:

I have ruled under Colorado law what we refer to as the rape shield statute, if you do testify, you will not be able to testify about any sexual matters between you and [the victim] that occurred prior to July 21 st of 2003, that is, you cannot testify as to any consensual sex that occurred, sexual acts that occurred between the two of you prior to this date. And I think it's been made clear that that does not keep you from testifying that what happened on July 21 st was consensual or some sexual fantasy but you cannot testify about any consensual sex or fantasy sex that was done prior to July 21 st, 2003.

Defendant testified that although he picked up a knife from the counter while in the apartment because he and the victim were arguing, he soon put it down and told her, "I just came here to talk to you ... [and I] didn't want to fight with you." He explained that she voluntarily drank the liquor. He said that all sexual conduct between them was consensual and that the victim had requested he bind her hands and feet. The trial court sustained the prosecutor's objection and barred defendant from testifying that the victim said, "[I]f we could do it the way I like to do it, my favorite fantasy," and describing what that meant to him.

## II. The Rape Shield Statute

If a statute is unambiguous, we look no further than its plain language. *People v. Renfro*, 117 P.3d 43, 50 (Colo.App.2004).

Section 18–3–407(1) provides in relevant part:

Evidence of specific instances of the victim's or a witness's prior or subsequent sexual conduct, opinion evidence of the victim's or a witness's sexual conduct, and reputation evidence of the victim's or a witness's sexual conduct may be admissible only at trial and shall not be admitted in any other proceeding.... At trial, such evidence shall be presumed to be irrelevant except: (a) *Evidence of the victim's or witness'[s] prior or subsequent sexual conduct with the actor* ....

(Emphasis added.)

Neither party asserts ambiguity in subparagraph (a), and we discern none.

■ The purpose of the statute "is one of public policy: to provide rape and sexual assault victims greater protection from humiliating and embarrassing public 'fishing expeditions' into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case." *People v. Golden*, 140 P.3d 1, 4 (Colo.App.2005)(quoting *People v. McKenna*, 196 Colo. 367, 371–72, 585 P.2d 275, 278 (1978)).

■ Evidence excepted from the statute "is not precluded by the statutory presumption of irrelevance or the procedural safeguards which are given to other evidence of a prosecutrix' past sexual activity. Such evidence is subject only to the usual rules of evidence." *People v. Martinez*, 634 P.2d 26, 31 (Colo.1981).

■ However, such evidence "is not automatically admissible:" "Specifically, a trial court must apply CRE 403 to balance the probative value of the proffered evidence against any possible unfair prejudice." *People v. Harris*, 43 P.3d 221, 225–26 (Colo. 2002). In striking this balance, the court affords the evidence "its maximum probative value and minimum unfair prejudice." *Fletcher v. People*, 179 P.3d 969, 975, 2007 WL 1175824 (Colo. No. 05SC646, Apr. 23, 2007).

■ Evidence must be both material and relevant to be admissible. *Id.* at 974. Materiality concerns the relation between the propositions that the evidence is offered to prove and the issues in the case. To be material, the evidence must relate to a "fact that is of consequence to the determination of the action." We necessarily look to ... the crime charged to make this determination.

*Id.* at 974 (quoting CRE 401) (citations omitted).

Material evidence must also be relevant. *Id.* To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." CRE 401.

▮▮▮ Evidence excepted from the rape shield statute "is relevant if it supports the defendant's claim of innocence." *See Martinez,* 634 P.2d at 31. Remoteness in time may affect the relevance determination. *Fletcher,* 179 P.3d at 974.

▮▮▮ A trial court has broad discretion when ruling on admissibility. *Fendley v. People,* 107 P.3d 1122, 1126 (Colo.App.2004). However, an erroneous evidentiary ruling may rise to the level of constitutional error if it deprives a defendant of his right to present a defense or to conduct meaningful cross-examination on material issues. *See People v. Cobb,* 962 P.2d 944, 950 (Colo.1998) ("where the limits imposed prevent a criminal defendant from using cross examination to explore the bias or prejudice of a witness against him, the requirements of the Sixth Amendment are not met"); *see also People v. Owens,* 183 P.3d 568, ──, 2007 WL 1438674 (Colo.App. No. 05CA1577, May 17, 2007).

### III. Prior Sexual Relationship and Sexual Fantasy

We agree with defendant that the trial court erred in restricting his testimony and cross-examination of the victim regarding the following points:

- The victim and defendant had maintained an intimate relationship after January 2003, and had consensual sex about a week before the July 21, 2003 incident;
- The victim had engaged in anal sex with defendant;
- The victim had a rape fantasy that she and defendant had acted out several times;
- The victim and defendant had engaged in bondage and rough sex at the victim's request; and

- On July 21, before sexual intercourse with defendant, the victim said, "[I]f we could do it the way I like to do it, my favorite fantasy."

### A. The Victim's Rape Fantasy

▮▮▮ We first conclude that evidence of the victim's alleged rape fantasy, including her statements to defendant concerning the fantasy, is material and relevant, and should have been admitted.

Judge Webb further concludes that this evidence is not covered by the statute, for the reasons discussed below. Judge Vogt would not reach this issue, as explained in her special concurrence. Judge Bernard would hold that this evidence is subject to the statute, but falls within an exception to its bar, as explained in his concurrence.

In *Golden,* 140 P.3d at 4, a division of this court concluded that "statements acknowledging the existence of a 'committed romantic relationship' are not evidence of sexual conduct" for purposes of the rape shield statute. *Cf. People v. MacLeod,* 155 P.3d 494 (Colo.App.2006)(*cert. granted* Mar. 26, 2007)(rape shield statute did not bar evidence of mother's statement about her own prior sexual molestation when urging daughter to report sexual abuse).

Similarly, the victim's statements to defendant regarding a rape fantasy do not constitute evidence of sexual conduct for purposes of the statute. The fantasy could be established without revealing whether the victim had ever acted it out. *See Golden,* 140 P.3d at 6 (noting that inquiry into the victim's prior inconsistent statements concerning a committed romantic relationship would not have subjected the victim "to a fishing expedition into her past sexual conduct"); *cf. People v. Cobb,* 962 P.2d at 951 (evidence is not inadmissible under the rape shield statute "simply because it might indirectly cause the finder of fact to make an inference concerning the victim's prior sexual conduct").

Therefore, the trial court abused its discretion by mistakenly applying the rape shield statute to this evidence.

We further conclude that the victim's statements to defendant about the rape fantasy, both before and on July 21, 2003, were material and relevant.

The victim's alleged consent was "of consequence to the determination of the action." CRE 401. Her description of being bound and forced at knife point to engage in sexual conduct was the antithesis of consent. But her alleged statements to defendant that she fantasized about being raped, coupled with her alleged statement on July 21, "if we could do it the way I like to do it, my favorite fantasy," relate to consent under the particular circumstances of the alleged assault. Therefore, this evidence is material.

■ This evidence is also relevant because from it defendant could make a rational argument that his admissions of binding her and cutting off her clothing were reconcilable with consent, thus supporting his claim of innocence. *See Martinez,* 634 P.2d at 31.

Accordingly, we conclude that the trial court erred by excluding evidence of the victim's alleged rape fantasy, including her statements to defendant.

### B. Prior Sexual Contact with the Actor

■ We also conclude that evidence of defendant's prior sexual relationship with the victim is subject to the prior sexual contact with the actor exception in section 18–3–407(1)(a), is material and relevant, and should have been admitted.

Because this evidence concerned prior sexual conduct between defendant and the victim, it constitutes "[e]vidence of the victim's ... prior ... sexual contact with the actor" under section 18–3–407(1)(a). Therefore, the trial court abused its discretion by mistakenly applying the rape shield statute to this evidence. Nevertheless, as with other evidence, we must consider both materiality and relevancy.

■ Here, the trial court barred the evidence of the continued sexual relationship between defendant and the victim after January 2003 as irrelevant, explaining that such conduct did not make the victim's alleged

consent more likely. We reach a different conclusion on the particular facts presented.

The parties have cited no Colorado case, nor have we found one, addressing materiality and relevancy of evidence under the sexual conduct with the actor exception. The Attorney General's reliance on cases involving sexual conduct between a victim and persons other than the accused is misplaced. *See, e.g., People in Interest of K.N.,* 977 P.2d 868 (Colo.1999).

In several other states with similar rape shield statutes, courts have recognized that evidence of prior consensual sexual conduct with the accused is probative of consent. *See, e.g., State v. Everidge,* 702 So.2d 680, 684 (La.1997); *Testerman v. State,* 486 A.2d 233, 236–37 (Md.Ct.App.1985)(collecting cases); *Commonwealth v. Grieco,* 386 Mass. 484, 436 N.E.2d 167, 170 (1982)(citing Fed.R.Evid. 412).

Federal Rule of Evidence 412(b)(1), which sets forth a prior sexual conduct exception to the federal rape shield statute similar to the Colorado exception, expressly provides a nexus to consent:

> [T]he following evidence is admissible ...
>
> ...
>
> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent. . . .

*Cf. 2 Weinstein's Federal Evidence* § 412.03[2] (Mathew Bender 2d ed.1997).

We are not persuaded otherwise by the Attorney General's quotation from *People v. McKenna,* 196 Colo. at 371, 585 P.2d at 278, "that in many instances a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent." The *McKenna* court was speaking of victims who had "consented to sexual relations *with others* on other occasions." *Id.* at 371, 585 P.2d at 277 (emphasis added). Further, we discern no purpose for the sexual conduct involving the victim and the actor exception unless such evidence would be material because it relates to consent, but subject to a relevancy determination that may vary considerably on the facts of particular cases.

The Attorney General does not argue for a heightened test of relevance before admitting evidence that the victim and the actor engaged in previous sexual conduct. We have found no Colorado case adopting such a rule in rape shield cases. *Compare Harris*, 43 P.3d at 225 (evidence excepted from the rape shield statute "remains subject to the usual rules of evidence"), *with State v. Gonyaw*, 146 Vt. 559, 507 A.2d 944, 947 (1985)("The acts must have been reasonably contemporaneous, and the relationship between the parties must support a reasonable belief that there was consent to renewed sexual activity.").

Here, the jury was not allowed to hear from defendant either the more recent sexual history evidence or evidence that the victim and defendant had engaged in bondage and acted out the rape fantasy. But the jury did hear evidence of how defendant threatened the victim with a knife and then bound her hands and feet. Thus, given the nature of these acts, exclusion of evidence supporting defendant's theory that he bound the victim as he had done previously, with her permission, made it very unlikely that reasonable jurors would have considered the sexual conduct consensual. *See State v. Garron*, 177 N.J. 147, 827 A.2d 243, 259 (2003) ("The trial judge permitted only fragmented pieces of evidence to be presented to the jury concerning [the victim's] relationship with defendant. That judicial censorship did more than distort the true picture of events leading to the sexual encounter—it made less likely that the jury would believe any part of the defense of consent.").

In this regard, we recognize the admonition that "use of force or violence negates consent." *People in the Interest of K.N.*, 977 P.2d at 873. But here, defendant's unusual theory was that the victim had previously consented to sexual conduct involving feigned force and violence. *See State v. Sanchez–Lahora*, 261 Neb. 192, 622 N.W.2d 612, 617 (2001)(requiring similarity between prior sexual conduct and sexual conduct charged).

Moreover, this evidence is not remote in time. Defendant would have testified that he and the victim had engaged in consensual sex only a week earlier. Therefore, it was relevant.

Accordingly, while we do not hold that prior consensual sex between a victim and an accused is always relevant, we conclude that on the particular facts presented here the trial court erred in excluding evidence that the parties' intimate relationship continued from January to July 2003 and evidence of sexual history involving bondage and acting out a rape fantasy, whether before or after January 2003.

### C. Unfair Prejudice

The Attorney General argues that even if the trial court erred in holding the evidence of the prior sexual conduct and the rape fantasy irrelevant, we should affirm exclusion of this evidence because the "probative value is substantially outweighed by the danger of unfair prejudice." *See* CRE 403. We disagree.

■ On appeal, a party may defend a trial court's judgment on any ground supported by the record, regardless of whether that ground was relied on by the trial court. *People v. Cook*, 22 P.3d 947, 949 (Colo.App. 2000).

■ Here, having held the evidence irrelevant and inadmissible under the statute, the trial court made no finding under CRE 403. Nevertheless, the Attorney General asks us to make this determination on appeal, and defendant does not contest our ability to do so.

Colorado law suggests that we can undertake such a task. *See People v. Rivera*, 56 P.3d 1155, 1169 (Colo.App.2002)(holding, in a review of postconviction hearing, that "the evidence would have been cumulative and properly excluded," citing CRE 403); *People v. Greenwell*, 830 P.2d 1116, 1119 (Colo.App. 1992) (upholding the exclusion of defense testimony in a jury trial, due to a late endorsement based, in part, on a determination that, under CRE 403, "[t]he proffered testimony was cumulative to that of another witness and could have been excluded on that basis alone notwithstanding the late endorsement"); *People v. Vialpando*, 804 P.2d 219, 223 (Colo.App.1990) (division of the court of

appeals undertook CRE 403 analysis absent a trial court ruling on the issue in a rape shield case).

■ However, in doing so we recognize that "CRE 403 strongly favors admission of relevant evidence." *People v. Harlan*, 8 P.3d 448, 496 (Colo.2000); *see also People v. Dist. Court*, 785 P.2d 141, 146 (Colo.1990) ("[T]he balance should generally be struck in favor of admission when evidence indicates a close relationship to the event charged." (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C.Cir.1984))).

■ We have acknowledged the relevancy and materiality of evidence concerning the victim's rape fantasy and the parties' prior sexual conduct. In contrast, we do not view the victim's statements regarding her fantasy to be unfairly prejudicial. These statements concerned thoughts, not actions. We discern no reason why a jury would be prejudiced against the victim for merely having voiced a fantasy. The Attorney General neither presents any such reason nor cites a case so holding.

■ We also do not consider admission of the prior sexual conduct evidence between the alleged breakup in January 2003 and a week before July 21, 2003, to be unfairly prejudicial. The victim had already admitted engaging in a sexual relationship with defendant before January 2003.

■ We reach the same conclusion as to evidence that the victim and defendant engaged in bondage and acted out a rape fantasy, but recognize this question to be closer. In her testimony, the victim admitted to having engaged in sex "doggy style" with defendant, which some jurors might have found no less unusual than bondage. Further, any possible prejudice to the victim from additional details of her sexual conduct with defendant pales in comparison with the relevance of the particular nature and duration of the relationship.

Accordingly, we conclude that the probative value of evidence concerning the victim's rape fantasy and the prior sexual conduct between defendant and the victim is not "substantially outweighed by the danger of unfair prejudice." CRE 403.

■ Finally, the Attorney General concedes that exclusion of this evidence, if error, is subject to harmless beyond a reasonable doubt review. On the particular facts presented, we agree. *See People v. Cobb*, 962 P.2d at 950 ("With the two main witnesses being the perpetrator and the victim, the significance of the victim's credibility to the outcome of the trial cannot be overstated."). Hence, we conclude that the exclusion was not harmless beyond a reasonable doubt, and the case must be retried.

## IV. Remaining Issues

Our grant of a new trial moots defendant's arguments regarding two juror challenges for cause. We decline to consider his instructional argument because he made a different argument below.

The judgment is reversed, and the case is remanded for a new trial consistent with the views expressed in this opinion.

Judge VOGT specially concurs.

Judge BERNARD specially concurs.

Judge VOGT specially concurring.

I concur in the judgment reversing defendant's conviction. However, because I believe we should not decide issues that do not need to be decided, *see, e.g., People v. Lybarger*, 700 P.2d 910, 915 (Colo.1985), I would not reach the "rape fantasy" issue on which my colleagues disagree.

To resolve the question presented in this appeal, it is not necessary to decide whether evidence of the victim's rape fantasy constituted evidence of sexual conduct for purposes of the rape shield statute. As made clear in defendant's offer of proof and written proposed questions, the evidence defendant sought to introduce consisted of the victim's fantasy about being raped by defendant and the occasions on which she and defendant acted out that fantasy. Thus, even if we were to assume that a rape fantasy can be considered sexual conduct, the evidence would not be barred under the rape shield statute in any event because it falls within

the exception set forth in section 18–3–407(1)(a), C.R.S.2007.

As evidenced by the authority cited by Judge Bernard, whether sexual fantasies are deemed sexual conduct is an issue on which the courts have differed. I would not decide the issue for purposes of Colorado's rape shield statute until we are presented with a case in which it needs to be decided.

Judge BERNARD specially concurring.

I fully agree with the result reached in this case. However, I respectfully disagree with the statement, contained in section III.A of the court's opinion, that "the victim's statements to defendant regarding a rape fantasy do not constitute evidence of sexual conduct for purposes of the [Rape Shield Statute]."

I believe statements about sexual fantasies are included within the scope of sexual conduct, as that term is used in the Rape Shield Statute. I base this belief on (1) the Rape Shield Statute's language, when interpreted in light of the legislative policies behind it, (2) precedent from other states, (3) an analysis of the federal counterpart to the Rape Shield Statute, Fed.R.Evid. 412, and (4) an analysis of two recent decisions by divisions of this court upon which the majority opinion relies.

### I. The Rape Shield Statute's Language

When construing the Rape Shield Statute, section 18–3–407, C.R.S.2007, our primary obligation is to give effect to the legislature's intent. We first look to the meaning of the words in the statute to discern that intent. If the language is not ambiguous, we rely on the plain meaning of those words. *People in Interest of K.N.*, 977 P.2d 868, 872 (Colo. 1999).

Section 18–3–407(1), C.R.S.2007, states that, subject to enumerated exceptions, the following evidence is presumed to be irrelevant: "Evidence of specific instances of the victim's or a witness's prior or subsequent sexual conduct, opinion evidence of the victim's or a witness's sexual conduct, and reputation evidence of the victim's or a witness's sexual conduct."

The reason for this presumption of irrelevancy was described in *People v. Murphy*, 919 P.2d 191, 194–95 (Colo.1996) (citations omitted):

> The basic purpose of the Rape Shield Statute is to provide rape and sexual assault victims greater protection from humiliating "fishing expeditions" into their past sexual conduct, unless a showing is made that the evidence would be relevant to some issue in the case. Prior to the enactment of the Rape Shield Statute, it was thought that the fact a woman had consented to sexual relations with others on other occasions would justify a logical conclusion that it was more probable that she had consented to the sexual act giving rise to the prosecution. As critical thought and analysis were brought to bear on these issues, it became apparent that a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent.

Victims of sexual assault should not be "subjected to psychological or emotional abuse as the price of their cooperation in prosecuting sex offenders." *People v. Kyle*, 111 P.3d 491, 496 (Colo.App.2004).

One definition of the noun "conduct" is "behavior in a particular situation or relation or on a specified occasion." *Webster's Third New International Dictionary* 474 (2002). "Conduct" is "[p]ersonal behavior, whether by action or inaction; the manner in which a person behaves." *Black's Law Dictionary* 315 (8th ed.2004). Had our General Assembly intended to limit the term "conduct" to direct evidence of physical acts, it could have used precise terms to express that desire, such as "sexual contact," "sexual intrusion," and "sexual penetration." § 18–3–401(4)–(6), C.R.S.2007.

### II. Precedent from Other States

Some courts interpret the term "sexual conduct" in their rape shield laws to exclude statements about prior sexual activity from the scope of the law's coverage. *People v. Jovanovic*, 263 A.D.2d 182, 193–95, 700 N.Y.S.2d 156, 165–67 (1999)(statements describing sexual conduct); *State v. Smith*, 45 N.C.App. 501, 503, 263 S.E.2d 371, 372 (1980)(language or conversation); *In re Johnson*, 61 Ohio App.3d 544, 550–51, 573

N.E.2d 184, 188 (1989) (victim's statement of desire for defendant); *Cairns v. Commonwealth*, 40 Va.App. 271, 283–84, 579 S.E.2d 340, 346 (2003) (written diary entries describing sex acts with others); *State v. Vonesh*, 135 Wis.2d 477, 488–91, 401 N.W.2d 170, 176–77 (Wis.Ct.App.1986)(written notes about sexual desires or activities); *see also State v. Garron*, 177 N.J. 147, 177–78, 827 A.2d 243, 261 (2003) (court did not "find it necessary ... to distinguish flirtatious speech and conduct from sexual conduct"; listing cases holding flirtatious and sexually provocative statements were not sexual conduct).

However, other courts have concluded that the term "sexual conduct" should be construed to include oral or written statements about previous sexual activity. *Rieger v. Arnold*, 104 Cal.App.4th 451, 461–62, 128 Cal. Rptr.2d 295, 302–03 (2002)(sexual harassment case; "testimony about the plaintiff's racy banter, sexual horseplay, and statements concerning prior, proposed, or planned sexual exploits"); *Logan v. State*, 212 Ga. App. 734, 735–36, 442 S.E.2d 883, 885–86 (1994)(victim's statements to defendant about past sexual conduct with others); *Shand v. State*, 341 Md. 661, 674–80, 672 A.2d 630, 636–39 (1996) (victim's alleged offer to trade sex for drugs); *State v. DeNoyer*, 541 N.W.2d 725, 730–31 (S.D.1995)(statements of willingness to perform sex acts on another man); *State v. Quinn*, 200 W.Va. 432, 437, 490 S.E.2d 34, 40 (1997) (statements victim made about others molesting victim); *see also People v. Santos*, 211 Ill.2d 395, 402–03, 286 Ill.Dec. 102, 813 N.E.2d 159, 162–63 (2004)(victim's statements about sexual activity with another man concerned "prior sexual activity," the language used in the Illinois rape shield law); *People v. Ivers*, 459 Mich. 320, 327–29, 587 N.W.2d 10, 13–14 (1998) ("The important distinction ... is not so much 'statements' versus 'conduct' as whether the statements do or do not *amount* to or *reference* specific conduct.").

### III. Analysis of Fed.R.Evid. 412

In 1994, Fed.R.Evid. 412, the federal equivalent of the Rape Shield Statute, was amended. The Rule, which contains exceptions, bars the admission of "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" in any "civil or criminal proceeding involving alleged sexual misconduct." Fed.R.Evid. 412(a). The Advisory Committee Notes to this subsection read: "Past sexual behavior connotes all activities that involve actual physical conduct, i.e. sexual intercourse or sexual contact. In addition, the word 'behavior' should be construed to include activities of the mind, such as fantasies or dreams." (Citations omitted.)

Courts construing Fed.R.Evid. 412, or state rule counterparts with similar language, have concluded that sexual thoughts or fantasies are to be treated as sexual behavior under the rule. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1103–06 (9th Cir. 2002) (sexual harassment case; Fed.R.Evid. 412 bars evidence of a plaintiff's "sexual sophistication or private sexual behavior"); *Wolak v. Spucci*, 217 F.3d 157, 159–161 (2d Cir.2000)(sexual harassment case; Fed. R.Evid. 412's reference to behavior encompasses mental activities, including fantasies); *Commonwealth v. Young*, 182 S.W.3d 221, 224 (Ky.Ct.App.2005)(victim's sexual fantasy was sexual behavior under Ky. R. Evid. 412 because sexual thoughts are treated as behavior). There is at least one dissenting view, decided before the 1994 amendments to Fed.R.Evid. 412. *State v. Kelekolio*, 74 Haw. 479, 520–21, 849 P.2d 58, 77 (1993) (testimony about victim's sexual fantasies not barred by Haw. R. Evid. 412, which is designed to protect victims from impeachment with past sexual conduct, not past sexual cognition).

### IV. Decisions of Colorado Courts

#### A. *People v. Golden* and *People v. MacLeod*

In *People v. Golden*, 140 P.3d 1, 4–6 (Colo. App.2005), a division of this court concluded that the victim's statements about being in a "committed romantic relationship" were not evidence of sexual conduct, and were therefore admissible to assist the defendant in proving the victim had lied about the sexual assault. *Golden* recognized that the existence of the relationship was important evidence, but that the court could redact references to specific sexual components of the relationship.

In *People v. MacLeod,* 155 P.3d 494, 496–98 (Colo.App.2006)(*cert. granted* Mar. 26, 2007), a division of this court held that the Rape Shield Statute did not bar evidence of a mother's statements about her own molestation to her daughter, designed to encourage the daughter to report sexual abuse. The division determined these statements were not sexual conduct, the admission of which would be barred by the Rape Shield Statute.

## B. Evidence of Previous False Accusations

There is a body of cases indicating that evidence of prior false accusations of unrelated sexual assaults is not excluded by rape shield statutes, relying on the reasoning that these statements are not evidence of sexual conduct. *E.g., State v. West,* 95 Hawai'i 452, 457–58, 24 P.3d 648, 653–54 (2001)(citing cases); *State v. Bray,* 356 N.J.Super. 485, 494–95, 813 A.2d 571, 577–78 (2003)(citing cases).

Section 18–3–407(2), C.R.S.2007, contemplates that defendants who satisfy certain conditions can present "evidence that the victim ... has a history of false reporting of sexual assaults" at trial. *See People v. Weiss,* 133 P.3d 1180, 1185–89 (Colo.2006) (discussing conditions to be satisfied before evidence of false reporting can be admitted).

## V. Discussion

As recently as 1970, *Wigmore on Evidence* suggested that every woman who claimed she had been raped should be subjected to a psychological evaluation. The reason for this claim was, "The unchaste (let us call it) mentality finds incidental but direct expression in the narration of imaginary sex incidents of which the narrator is the heroine or victim." 3A John Henry Wigmore, *Evidence in Trials at Common Law,* § 924a, at 736 (James H. Chadbourn ed., rev. vol.1970). This language suggests the attitude that some women accuse men of rape because they have conflated sexual fantasy with criminal violence.

The Rape Shield Statute represents an express rejection of such attitudes. We now recognize the scarring effects of sexual assault, and the burden placed on victims by testifying about such a deeply personal invasion. We now also understand that evidence of past sexual acts with others has little probative value of whether a victim consented to have sex with a defendant in the present. *People v. McKenna,* 196 Colo. 367, 371, 585 P.2d 275, 278 (1978).

In my view, this lack of probative force extends to evidence about a victim's sexual fantasies. Requiring a victim to testify about sexual fantasies can be as intrusive as testifying about prior sexual acts. As one commentator observed:

> From a policy perspective, it is difficult to imagine a greater intrusion on the privacy of the victim than an inquiry into her sexual fantasies. Even if one does not regard thought as "behavior," surely proof of attitudes toward sex can only be viewed as an attempt to prove or insinuate sexual conduct by circumstantial means.

Charles Alan Wright & Kenneth W. Graham, Jr., 23 *Federal Practice and Procedure: Evidence* § 5384, at 548 (1980)(footnotes omitted).

To effectuate the important policies motivating the Rape Shield Statute, I would interpret the phrase "sexual conduct" to include behavior. I believe the common meaning of the word "conduct," as indicated by the dictionary definitions cited above, leads to this conclusion. Because I would include behavior within the scope of conduct under the Rape Shield Statute, I would, consistently with Fed.R.Evid. 412, include sexual fantasies within the scope of behavior.

This analysis is consistent with cases from other jurisdictions that interpret sexual conduct to refer to activity beyond sex acts, such as statements and sexual fantasies, especially *Shand v. State,* 341 Md. at 674–80, 672 A.2d at 636–39, which follows an analytical course similar to the one I employ here. I would hew to these cases because I believe these decisions are better reasoned: they are more faithful to the policies that motivate the Rape Shield Statute.

I submit that *Golden* and *MacLeod* are distinguishable. Neither case discussed the concept of sexual fantasy. *Golden* was careful to indicate that the nature of the statement the division concluded should be admitted was not inherently sexual. Thus, the

division in *Golden* avoided the broad conclusion that statements about sexual acts are not sexual conduct for purposes of the Rape Shield Statute. Here, in contrast, testimony about sexual fantasies is inherently sexual.

Although *MacLeod* may have reached the broad conclusion that was not reached in *Golden*, I respectfully submit *MacLeod* may have been wrongly decided. Although the opinion cited several of the cases from other jurisdictions listed above concluding that statements were not sexual conduct for purposes of their rape shield laws, the opinion did not refer to any of the cases that concluded otherwise, nor did it analyze Fed.R.Evid. 412. Thus, *MacLeod* did not recognize the split of authority on this issue, and it was not informed by an evaluation of a substantial body of contrary precedent that may have led to a different conclusion.

However, even assuming the reasoning in *Golden* and *MacLeod* would support the conclusion that statements about sexual conduct are not sexual conduct for purposes of the Rape Shield Statute, we are not bound by those decisions, and I would not choose, for the reasons articulated in this concurring opinion, to follow them. *See In re Estate of Becker*, 32 P.3d 557, 563 (Colo.App.2000), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002).

The express exception to the Rape Shield Statute for evidence of previous false accusations does not address the issue here. Evidence of a victim's sexual fantasies does not implicate the concerns behind the need for allowing evidence of prior false accusations, and, in any case, trial courts must find that the prior accusations were demonstrably false before allowing such evidence to be introduced. *People v. Weiss*, 133 P.3d at 1185–89; *State v. West*, 95 Hawai'i at 459, 24 P.3d at 655. Prior false accusations carry

significant evidentiary weight; evidence of sexual fantasies with others carries no more weight than evidence of prior consensual sexual contact with others.

When the issue in a sexual assault case involving force is whether the victim consented to sexual contact, "the understanding or state of mind of the accused regarding the complainant's sexual history is neither material nor relevant." *People in Interest of K.N.*, 977 P.2d at 873. I would give force to this language, and to the policies behind the Rape Shield Statute, by including a victim's sexual fantasies within the term "sexual conduct."

## VI. Conclusion

Although, in my view, sexual fantasies are sexual conduct under the Rape Shield Statute, I agree entirely with the majority that the specific evidence concerning the victim's "favorite fantasy" was admissible under the exception contained in section 18–3–407(1)(a), C.R.S.2007. Here, defendant claimed the victim consented to sexual activity because, in part, she allegedly told him she wished to act out her "favorite fantasy" with him. This offer of proof was evidence of the victim's "prior or subsequent sexual conduct with the actor" under section 18–3–407(1)(a). Therefore, the evidence of her statements about the fantasy at the time of the alleged assault, and her previous statements to defendant describing the fantasy, should have been admitted at defendant's trial.