1
 2026 CO 53 The People of the State of Colorado, Petitioner v. Donald Louis Gerle. Respondent No. 24SC542Supreme Court of Colorado, En BancJune 23, 20262
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 23CA481
 
 
          
 Attorneys for Petitioner: Philip J. Weiser, Attorney General
 Jaycey DeHoyos, Assistant Attorney General Denver, Colorado
 
 3
 
          
 Attorneys for Respondent: Fuller &Ahern, P.C. Brian M.
 Close Parker, Colorado
 
 4
 
          
 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE BLANCO joined.
 
 5
 
          
 OPINION
 
 
          
 BERKENKOTTER, JUSTICE.
 
 
          ¶1
 Donald Louis Gerle was charged with first and second degree
 assault and false imprisonment. See §
 18-3-202(1)(a), C.R.S. (2025); § 18-3-203(1)(g), C.R.S.
 (2025); § 18-3-303(1), C.R.S. (2025). The People alleged
 that he repeatedly beat the victim, his wife, between
 November 12, 2021, and November 15, 2021; confined her in a
 closet during the last fourteen hours of the assaults; and
 caused her to suffer serious bodily injury and other
 significant injuries, including two black eyes, two broken
 ribs, plate-sized bruises on her body, and a collapsed lung.
 
 
          ¶2
 At trial, Gerle sought to introduce texts that he and the
 victim had exchanged on November 8, three days before the
 charged incident began. The texts reflected that the two had
 previously engaged in sexual bondage, discipline, dominance,
 submission, sadism, and masochism ("BDSM")
 role-playing. Gerle claimed that the texts were probative of
 the consent element of his false imprisonment charge as well
 as the intent element of all three charges. The People
 objected, arguing that the texts should be excluded under
 Colorado's rape shield statute, § 18-3-407, C.R.S.
 (2025), and under CRE 401, 402, and 403.
 
 
          ¶3
 The trial court sustained the objection, ruling that
 discussion of sexual BDSM-related evidence violated the rape
 shield statute and that the texts were not relevant because
 they did not relate to the time during which the charged
 conduct occurred. The court accordingly barred defense
 counsel from mentioning BDSM
 
 6
 
 in their opening statement, limited counsel's questioning
 of the victim regarding the text messages, and declined to
 admit the texts as evidence.
 
 
          ¶4
 Gerle was convicted at trial and appealed, arguing that the
 trial court erroneously (1) applied the rape shield statute,
 (2) denied his request for a mistrial, and (3) excluded
 evidence during his cross-examination of the
 victim—which cumulatively warranted reversal.
 
 
          ¶5
 A division of the court of appeals concluded that the trial
 court erred in applying the rape shield statute because Gerle
 had not been charged with sexual assault. People v.
 Gerle, No. 23CA481, ¶¶ 22, 25 (July 11, 2024).
 It then determined that the trial court erred in excluding
 the BDSM-related evidence because the texts showed the
 "particular nature" of Gerle and the victim's
 relationship and thus were relevant to consent and lack of
 intent. Id. at ¶ 38 (quoting People v.
 Garcia, 179 P.3d 250, 258 (Colo.App. 2007)). The
 division reversed and remanded the case for a new trial.
 Id. at ¶ 47.
 
 
          ¶6
 We now reverse the division's judgment. We conclude that
 the trial court did not abuse its discretion in excluding the
 BDSM-related evidence as irrelevant. See CRE 401.
 While a prior act may be relevant to charged conduct, the
 prior act here involved a BDSM encounter that was explicitly
 sexual in nature. No evidence indicated that Gerle and the
 victim planned or were otherwise engaged in a consensual
 sexual BDSM encounter during the charged incident. Therefore,
 this
 
 7
 
 evidence was inadmissible to suggest that the victim
 consented to Gerle confining her or to suggest that Gerle did
 not intend to confine the victim against her will or to
 assault her, but rather acted recklessly.[1] That is, the text
 messages do not make it more probable that the victim
 consented to being confined or less probable that Gerle
 intended to confine and assault the victim.
 
 
          ¶7
 We need not address the division's decision as to the
 rape shield statute because the People concede the trial
 court's error.
 
 
          I.
 Facts and Procedural History
 
 
          ¶8
 Gerle and the victim began arguing on Thursday, November 11,
 2021, when the victim, in response to a question from Gerle,
 said she could not remember the name of her ex-boyfriend.
 Gerle did not believe the victim, and what began as a verbal
 argument escalated into physical abuse, which intensified
 over the course of the next three days. On Thursday, Gerle
 broke the victim's laptop and printer. On Friday, when
 the argument about the ex-boyfriend resumed, Gerle used a
 camera tripod like a bat and hit the victim with it until the
 tripod's legs bent.
 
 
          ¶9
 After the argument resumed on Saturday evening, Gerle
 confined the victim to a walk-in closet for roughly fourteen
 hours (into the early morning hours on
 
 8
 
 Sunday) and beat her with his hands and various objects
 including hangers, a belt buckle, and steel-toe boots. Gerle
 insisted, while he had the victim confined, that she write
 down the name of her ex-boyfriend. While in the closet, the
 victim lost consciousness.
 
 
          ¶10
 When the victim regained consciousness and was eventually
 able to get up, she drove herself to the hospital. There, she
 was treated for two black eyes, a collapsed lung, a puncture
 wound on her ankle, two broken ribs, and bruises all over her
 body, including behind her ears. Gerle was charged with
 assault in the first degree, assault in the second degree,
 and false imprisonment.
 
 
          ¶11
 At trial, Gerle's opening statement suggested that the
 charged conduct was part of Gerle and the victim's
 "ongoing and regular sexual fantasy role-playing."
 The People objected, noting that the defense had not provided
 notice of their intent to offer evidence of the victim's
 past sexual conduct, as required under the rape shield
 statute. See § 18-3-407(2)(a). The trial court
 sustained the objection under the rape shield statute and
 barred defense counsel from mentioning the sexual BDSM
 role-playing during opening statement.
 
 
          ¶12
 Gerle later sought to admit texts that he and the victim
 exchanged on November 8. He argued that they were relevant to
 disprove the consent element of the false imprisonment
 charge, and the intent element of all the charges. The texts
 included a screenshot of an erotic novel the victim had read,
 Gerle's and the
 
 9
 
 victim's discussion of the novel, and descriptions of a
 variety of their sexual fantasies. These fantasies included a
 sexual BDSM role-playing scenario the two appeared to have
 planned for that evening, which included Gerle using a soft
 whip on the victim's back. The texts included the
 following relevant exchanges:
 
 
 Gerle: You still need to b[e] whipped on the back [sixteen]
 times for your Disobedience—SIR[.]
 
 
 Victim: Thank you SIR[,] PET deserves whatever SIR
 delivers[.] .
 
 
 ...
 
 
 Gerle: Those [three] rules will b[e] in our SUB / DOM
 contract. W[ith] a list of punishments for rule breaking[.]
 
 
 Victim: Yes, SIR[.]
 
 
 ....
 
 
 Gerle: B[e] home in [ten] min[utes].... [Yo]u still have some
 lashes coming.
 
 
 Victim: I am looking forward to them SIR[.]
 
 
 ....
 
 
 Victim: PET gets hot with anticipation of what's coming.
 PET just realized she likes the soft whip[.]
 
 
 ....
 
 
 Gerle: Nothing turns me on more than hearing [you] talk about
 real or imagined sex stories[.]
 
 
          ¶13
 The People objected to the admission of these texts based on
 the rape shield statute and on the ground that they were not
 relevant. The court deferred ruling, as Gerle's counsel
 indicated that they would file a brief regarding the
 admissibility
 
 10
 
 of the text messages that evening. Counsel did so, arguing
 that the rape shield statute did not apply, that the messages
 were relevant, and that the court's limitation on
 Gerle's opening statement warranted a mistrial. The trial
 court denied the motion.
 
 
          ¶14
 The court ruled that Gerle could not use the text messages
 unless defense counsel could connect the texts "to the
 timeframe that's relevant to these charges," in
 which case it would be "fair game to ask about it."
 If, however, the victim denied any such connection, then
 Gerle would be "stuck with that answer." The court
 additionally allowed Gerle's counsel to cross-examine the
 victim about whether the conduct on the charged dates was
 consensual.
 
 
          ¶15
 On cross-examination, the victim answered that she had not
 consented to being whipped—"not like he did to
 me"—on the dates of the incident. She explained
 that she had previously consented to Gerle gently using a
 soft "cat [o'] nine tails thing." But she
 emphasized that "we weren't engaged in that during
 [those four] days." The trial court did not allow any
 follow-up questions and sustained the People's objection
 to the admission of the text messages.
 
 
          ¶16
 The jury found Gerle guilty on all counts, and the trial
 court sentenced him to twenty-two years in prison. Gerle
 appealed, arguing that the court abused its discretion by (1)
 applying the rape shield statute to limit his opening
 statement, (2) denying his request for a mistrial, and (3)
 improperly excluding the
 
 11
 
 BDSM-related texts. He further asserted that the cumulative
 effect of the errors warranted reversal.
 
 
          ¶17
 A division of the court of appeals agreed. It concluded that
 the trial court abused its discretion both by applying the
 rape shield statute and by otherwise excluding the texts as
 irrelevant. Gerle, ¶ ¶ 22-23, 27. First,
 the division held that the rape shield statute was
 inapplicable, as there was no allegation that the victim had
 been sexually assaulted, and section 18-3-407(2)(a) limits
 the statute's application to cases in which a witness is
 a sexual assault victim or the crime charged is a sexual
 offense. Gerle, ¶ 25.
 
 
          ¶18
 Second, the division determined that the trial court erred in
 declining to admit the BDSM-related texts under general
 relevance principles. Id. at ¶ 29. It noted
 that in Garcia, 179 P.3d at 255—a case that it
 viewed as comparable—another division of the court of
 appeals had concluded that a victim's past sexual
 fantasies were relevant to issues of consent. Gerle,
 ¶ 31. Therefore, the division reasoned, the victim's
 BDSM fantasies were similarly relevant to Gerle's false
 imprisonment and assault charges. Id. at ¶ 32.
 The victim's "potential consent to being locked in a
 bedroom closet to engage in BDSM activities," the
 division explained, spoke to the "lack of consent"
 element of false imprisonment. Id. at ¶¶
 30-33, 36 (citing Garcia, 179 P.3d at 254-58).
 
 12
 
          ¶19
 The division further determined that "if the incident
 began as a consensual BDSM encounter," then Gerle may
 have lacked the intent to confine the victim against her will
 and may have injured the victim recklessly rather than with
 intent. Id. at ¶¶ 33-35. The division
 noted that evidence that the two had "previously
 participated in BDSM role-playing encounters and had just
 planned another such encounter makes it more probable that
 the victim consented to at least some of the conduct and
 makes it less likely that Gerle had the requisite intent for
 the three charged crimes." Id. at ¶ 35
 (citing Garcia, 179 P.3d at 256).
 
 
          ¶20
 The division then concluded that the BDSM-related texts were
 not unfairly prejudicial under Rule 403. Gerle,
 ¶ 38. Leaning again on Garcia, the division
 determined that the probative value of showing "the
 particular nature . . . of the relationship" far
 outweighed any prejudice. Id. (alteration in
 original) (quoting Garcia, 179 P.3d at 258). Having
 decided that the trial court should have admitted the texts,
 the division ultimately concluded that these cumulative
 errors may have affected the fairness of the trial and
 influenced the verdict. Id. at ¶ 47.
 Accordingly, the division reversed and remanded the case to
 the trial court for a new trial. Id.
 
 
          ¶21
 The People petitioned for certiorari, and we granted their
 petition.[2]
 
 13
 
          II.
 Analysis
 
 
          ¶22
 We begin by setting forth the applicable standard of review
 and relevant case law. Next, we briefly cover the
 requirements of the rape shield statute, § 18-3-407.
 Then, we discuss Rule 401 and 402. Finally, we consider the
 facts of this case and assess whether the texts are relevant
 to the issues of consent and intent. Ultimately, we reverse
 the division's conclusion as to the relevance of the
 BDSM-related texts and leave undisturbed its conclusion that
 the rape shield statute did not apply here.
 
 
          A.
 Standard of Review
 
 
          ¶23
 We review a trial court's evidentiary ruling for an abuse
 of discretion. People v. Elmarr, 2015 CO 53, ¶
 20, 351 P.3d 431, 437-38. "A trial court abuses its
 discretion when its decision is 'manifestly arbitrary,
 unreasonable, or unfair,' or based on a misapplication of
 the law." People v. West, 2025 CO 61, ¶
 13, 578 P.3d 832, 835 (quoting People v. Kent, 2020
 CO 85, ¶ 28, 476 P.3d 762, 768).
 
 
          B.
 The Trial Court Abused Its Discretion by Improperly Applying
 the Rape Shield Statute
 
 
          ¶24
 In cases involving sexual assault, evidence of a victim's
 or a witness's prior sexual history is generally presumed
 irrelevant outside of specifically enumerated
 
 14
 
 exceptions. See § 18-3-407. The rape shield
 statute was designed to protect victims and witnesses from
 "humiliating 'public "fishing expeditions"
 into their past sexual conduct.'" People v.
 Gulyas, 2022 COA 34, ¶ 41, 512 P.3d 1049, 1057
 (quoting People v. MacLeod, 176 P.3d 75, 79 (Colo.
 2008)).
 
 
          ¶25
 Here, the People concede that the procedure and notice
 requirements in section 18-3-407 do not apply. The crimes
 charged—false imprisonment and first and second degree
 assault—are not sexual offenses, and there is no
 allegation that the victim had been sexually assaulted.
 Accordingly, we do not disturb the division's conclusion
 that the trial court's rape shield ruling was erroneous
 as a matter of law. Gerle, ¶ 25.
 
 
          C.
 The Trial Court Did Not Abuse Its Discretion by Excluding the
 BDSM-Related Texts
 
 
          ¶26
 That leaves the question of relevance. The People contend
 that the trial court did not abuse its discretion in
 excluding the BDSM-related text messages because the messages
 were not relevant to the charged conduct. We agree.
 
 
          ¶27
 Generally, evidence is relevant and presumptively admissible
 when it has "any tendency to make the existence of any
 fact that is of consequence to the determination of the
 action more probable or less probable." CRE 401; see
 also CRE 402 ("Evidence which is not relevant is
 not admissible."). In criminal cases, evidence that
 "makes it more or less probable that a criminal act
 occurred" is relevant. People v. Clark, 2015
 COA 44, ¶ 17, 370 P.3d 197, 204.
 
 15
 
          ¶28
 Conversely, evidence that is irrelevant is inadmissible at
 trial. CRE 401; CRE 402. Evidence that is too remote in
 logical relation to a matter in dispute should not be
 admitted. Fletcher v. People, 179 P.3d 969, 974
 (Colo. 2007); see also People v. Botham, 629 P.2d
 589, 602 (Colo. 1981) ("[F]acts bearing so remotely upon
 or collateral to the issue, that they afford only conjectural
 inference, should not be admitted in evidence.").
 
 
          ¶29
 Importantly here, Gerle is not charged with sexual assault;
 he is charged with false imprisonment and first and second
 degree assault. As we have explained, he sought to admit
 evidence regarding the text messages during the victim's
 cross-examination to contest the consent element of the false
 imprisonment charge and the intent element of all three
 charges. But the conduct described in the November 8 texts
 bears no similarity to the charged conduct which began
 three days later and took place over the span of
 four days.
 
 
          ¶30
 Most significantly, the texts, unlike the charged conduct,
 are overtly sexual in nature. True, Gerle mentions whipping
 the victim "on the back [sixteen] times for [her]
 [d]isobedience" and still "hav[ing] some lashes
 coming." And the texts also identify "a list of
 punishments" for breaking certain role-playing rules.
 But these messages are part of Gerle's and the
 victim's sexually charged conversation. ¶31 Here,
 context matters. The subject of whipping first arose when
 Gerle directed the victim to provide details about an erotic
 novel she had read. Later,
 
 16
 
 Gerle and the victim described a variety of their sexual
 fantasies. Notably, Gerle repeatedly stated how aroused he
 was. Throughout the texts, the two used graphic language,
 discussing a range of sexual topics from what makes the
 victim "hot," to sex toys, to a specific sex act
 that the victim said she liked engaging in with Gerle.
 
 
          ¶32
 To the extent that the text messages revealed a plan for a
 sexual encounter, the encounter described was imminent, not
 something planned to begin days later. When Gerle told the
 victim that she had "some lashes coming," he also
 told her that he would be home soon and that he was sexually
 aroused from their earlier texts. The victim replied that she
 was "looking forward to [it]" and that she would be
 waiting for him. The texts did not suggest that they were
 planning a consensual BDSM sexual encounter three to seven
 days later.
 
 
          ¶33
 What transpired during those four days was altogether
 different. The charged conduct began as an argument about the
 victim's ex-boyfriend. The victim claimed she did not
 remember the ex's name, but Gerle did not believe her and
 insisted that she did. Their argument continued as
 Gerle's physical assaults intensified, including during
 the fourteen hours during which Gerle confined the victim in
 their bedroom closet. It was there, in the midst of beating
 the victim, that he forced her to write down her
 ex-boyfriend's name.
 
 17
 
          ¶34
 Nothing suggests that this conduct which began on Thursday
 and escalated on Friday and Saturday and into the early
 morning hours on Sunday had anything to do with sex. The
 stark differences between the impending sexual encounter with
 a soft whip described in the texts and Gerle's later
 confinement and physical assault of the victim renders the
 evidence regarding the text messages irrelevant and thus
 inadmissible. In short, because there is no resemblance
 between the two instances of conduct, the texts would
 improperly invite the jury to speculate about consent and
 intent. And while Gerle might have argued that this evidence
 was conditionally relevant, see CRE
 104(b),[3] the text messages did not connect to any
 theory that Gerle and the victim planned to engage in or had
 engaged in any sexual acts during the charged incident.
 What's more, Gerle does not point to any evidence that
 would support this missing condition.
 
 
          ¶35
 But what about the division's conclusion, based on
 Garcia, that the texts were relevant?
 Gerle, ¶¶ 34-35, 48. To answer this
 question, we turn to consider Garcia.
 There, a division of the court of appeals considered
 the admissibility of evidence in a sexual assault prosecution
 regarding (1) the victim's rape fantasy and (2) prior
 consensual sex between the defendant and the victim.
 Garcia,
 
 18
 
 179 P.3d at 255-57. The trial court in Garcia
 excluded the defendant's testimony that the victim
 fantasized about being tied up with a rope and raped; that he
 and the victim had acted her fantasy out several times; and
 that before having sexual intercourse with the defendant on
 the date charged, the victim said, "[I]f we could do it
 the way I like to do it, my favorite fantasy."
 Id. at 256.
 
 
          ¶36
 The Garcia division determined that the trial court
 erred in barring the defendant's testimony under the rape
 shield statute. Id. at 255. It concluded that the
 victim's alleged rape fantasy and prior acting out of the
 fantasy were relevant to consent. Id. It reasoned
 that the defendant's testimony in this regard could make
 his admission that he tied her up and had sex with her at
 knifepoint reconcilable with consent, rather than inherently
 nonconsensual. Id. at 256.
 
 
          ¶37
 In this case, the division's reliance on Garcia
 is misplaced. In Garcia, the victim's fantasy
 and the couple's acting out of the fantasy as described
 by the defendant were almost identical to the sexual assault
 with which the defendant was charged. Id. at 257.
 
 
          ¶38
 But as we have already explained, the conduct with which
 Gerle was charged is not at all similar to the encounter
 described in the texts. That conduct arose out of the
 argument between Gerle and the victim regarding her
 ex-boyfriend. It had nothing to do with sex. Thus, the
 division below erred by extending the logic of
 Garcia to infer a connection between the
 BDSM-related texts
 
 19
 
 and the charged conduct here without considering the very
 different circumstances of the facts before it. Because the
 conduct with which Gerle is charged had nothing to do with
 sex, evidence regarding Gerle's and the victim's past
 consensual sexual BDSM encounter is not relevant.
 See CRE 401. The texts cannot support an inference
 of reckless escalation of an otherwise consensual sexual BDSM
 encounter.
 
 
          ¶39
 Put differently, the evidence regarding Gerle's and the
 victim's sexual BDSM encounter does not make it more
 probable that the victim consented to being confined in the
 closet or make it less probable that Gerle intended to
 confine and assault the victim. See CRE 401. For
 these reasons, the trial court did not abuse its discretion
 in excluding the BDSM-related text messages and limiting
 Gerle's opening statement and cross-examination of the
 victim regarding the texts.
 
 
          III.
 Conclusion
 
 
          ¶40
 We reverse the judgment of the court of appeals.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We do not understand Gerle to argue
 that the victim consented to the physical activity that
 caused serious bodily injury. Consent is not a defense to
 assault that causes serious bodily injury as a matter of law.
 § 18-1-505(2), C.R.S. (2025).
 
 
 [2] We granted certiorari to review the
 following issue:
 
 
 
 Whether evidence of prior consensual sexual activity
 between a victim and defendant is relevant to prove the
 victim's consent and the defendant's lack of intent
 for purposes of false imprisonment and assault
 charges.
 
 
 
 [3] Conditionally relevant evidence is
 evidence whose relevance depends on the introduction of
 subsequent evidence establishing its probative value. See
 People v. Dunham, 2016 COA 73, ¶ 33, 381 P.3d 415,
 422.
 
 
 ---------